D. W. ROBERTSON and LORAINE ROBERTSON

*v.*

CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY
COMPANY.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

JOE TIMBERLAKE, JR., Chattanooga, for plaintiffs in error.

WHITAKER, HALL & HAYNES, Chattanooga, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

The defendant Railway Company operates its switchyard on property belonging to it within 1,800 feet of the residence of Mr. and Mrs. Robertson. As a result of such operations, Mr. and Mrs. Robertson sued the railroad for damages to this realty. Their declaration specified the activities of the railroad in the operation of this switchyard, and alleged that such operation "constitutes a continuous and perpetual nuisance which has greatly depreciated and diminished in value" their aforesaid realty. They seek a recovery to the extent of its alleged depreciation.

To the action of the Court in overruling Mr. and Mrs. Robertson's demurrer to the special plea of the railroad and in dismissing their suit upon their refusal to further plead, Mr. and Mrs. Robertson have prosecuted this appeal.

The allegations of their declaration are that this large switchyard is used to make up trains to be sent to destinations elsewhere, or to disassemble trains coming in to Chattanooga from other places; that the railroad constructed upon this switchyard a vast lighting system which glares upon the plaintiffs' property through-out the night; also many railroad tracks upon which night and day many railroad cars are sent rolling until they kick into, and become coupled with, other cars so as to make up a train; also a loud speaker system so loud that the words are audible above the other noises caused by the running of the cars over the tracks and the whistling of the railroad engines, these noises being heard all through the night and day.

The railroad's special plea alleged that the installation and construction of these tracks, lights, etc. commenced in 1953, and, after completion, the aforesaid operations of the switchyard commenced on February 28, 1955, and that such operations have been continuous thereafter, and are "carried on in a non-negligent manner"; that necessarily incident to such operations there are created the glares and noises alleged in the declaration.

Then this special plea avers that the plaintiffs' cause of action, if any they had, accrued more than three years before the institution of plaintiffs' suit on July 30, 1958; hence, is barred by sec. 28-305, T.C.A. which provides that actions for injuries to real property shall be commenced within three years from the accruing of the cause of action; or, in the alternative, that such cause of action, if any, accrued more than twelve months before the commencement of the action, and is, therefore, barred by sec. 23-1424 T.C.A. This code section provides that when the land of an owner is taken for public improvement without condemnation that owner shall commence suit within twelve months for recovery of the value of the land taken and for incidental damages. This statute is pled on the theory that the effect upon plaintiffs' property by the aforesaid operation of the switchyard might be construed to be a taking, to that extent, of this realty.

The demurrer of Mr. and Mrs. Robertson to this special plea is:

"The basis for plaintiffs' recovery herein is the maintenance of a continuous and perpetual nuisance for which a statute of limitations cannot accrue, run or bar, since the very continuation of a nuisance is a

new offense wherefore the plaintiffs demur and pray the judgment of the Court hereon.''

■ If the damages resulting from the commission of the nuisance is based on the fact that the defendant is negligently operating its property so as to unnecessarily create the damage, hence is a wrong within the power of the defendant to correct by operating in a non-negligent manner, then the damages to the property of the plaintiffs are recurrent and ''may be recovered from time to time until the nuisance is abated'', *Louisville & N. Terminal Company v. Lellyett,* 114 Tenn. 368, 403, 85 S.W. 881, 890, 1 L.R.A.,N.S., 49; that is, so long as the negligent manner of operation is continued. It is conceded that the railroad is guilty of no negligence in the operation of this yard.

■ On the other hand, if the operations of the defendant upon its

''yards, etc. are carefully and properly operated, so much so as can be done considering the use of the property; but the location of the yards, etc., and their proper operation nevertheless causes an actionable injury to the plaintiff's property. In such case it is not contemplated that any change in operation will be made, and the damage will continue so long as the yards are continued, which will be permanently.

''In such case the proper measure of damages will be the injury to the fee or permanent value of the property by the continued and permanent operation of the yards. To the extent that such permanent injury is inflicted, the property is, in a sense, taken or appropriated.'' *Louisville & N. Terminal Company v. Lellyett,* supra, 114 Tenn. 404, 85 S.W. 890.

The operation of this railroad yard falls within this classification.

Mr. and Mrs. Robertson conceded that the acts of the railroad constitute a continuous and perpetual nuisance. They say, however, that every day the nuisance is continued a new cause of action arises; hence, that "a statute of limitations cannot accrue". As authority for that position they rely solely upon *Nashville & Decatur Railroad v. State of Tennessee*, 60 Tenn. 55.

In the Nashville & Decatur Railroad case, supra, the railroad company, in constructing its road, crossed the public road with a high embankment. Its charter allowed this "to be done when necessary, *provided the company make another road, 'as convenient as may be'*. It is alleged by the prosecution that this was not done." (Emphasis supplied.) That is, the railroad had not made another road "as convenient as may be", as it was in duty bound to do.

The situation being as immediately above stated, the Court held that the prosecution was not barred by any statute of limitations because "the very continuation of a nuisance is a new offense". That is, the railroad continued to violate the law and its charter so long as it failed to construct another road "as convenient as may be". It was within the power of the railroad to cease this violation at any time it so elected by constructing another road "as convenient as may be".

That such is the proper construction of the Nashville & Decatur Railroad case, supra, is verified by *Harmon v. Louisville, N.O. & T. Railroad Co.*, 87 Tenn. 614, 620, 11 S.W. 703, 704. There the Court held that a former judgment recovered by the plaintiff by reason of the occupa-

tion of the street "for ordinary railroad purposes" in accordance with "its charter and the contract with the taxing district" barred the present action, because its occupation to that extent "was lawful, and the use and the consequent injury were permanent in character" "and the damages must be recovered in one action".

So, in the Nashville & Decatur Railroad case damages were recurrent because the act causing those damages was unlawful and could be corrected. In the instant case, to the contrary, it is conceded that the lawful operation of the railroad yard was conducted in a proper manner and the acts which caused the damage to the realty of Mr. and Mrs. Robertson were necessarily incident to that proper operation. Further, the use of the railroad yard and the consequent injury to the Robertsons' realty were permanent in nature.

From that so considered and concluded herein, it is established (1) that the damage to the Robertson realty is permanent in nature and the measure thereof is the amount of depreciation in the market value of the fee to this realty, *Louisville & N. Terminal Company v. Lellyett,* supra, and (2) that such "damages must be recovered in one action". *Harmon v. Louisville N. O. & T. Railroad Co.,* supra.

Now as to when such right of action accrued so as to start the running of the statute of limitations, it is said in the text of 34 American Jurisprudence, under the title "Limitation of Actions", Section 131, page 106, and in support of which text decisions of many jurisdictions are cited, that the rule applicable is this:

"Where the original act or cause of injury is permanent in its nature, and the damages, both present and

prospective, may be recovered in one action, the statute will generally be regarded as attaching at the time the act complained of is done."

■ This Court has never passed directly upon the proposition stated in the foregoing text of American Jurisprudence, in so far as has been found. But this Court considers the proposition, as there stated, to be logical. Nor can it think of any reason why it should decline to approve the rule as there stated, and as apparently has been followed by the great majority of jurisdictions which have had occasion to decide the question. Accordingly this Court approves the rule as there stated.

Since this suit was not commenced until July 30, 1958, after the commencement of operations on February 28, 1955, it follows that the cause of action stated by the declaration is barred by the aforesaid three year statute of limitations carried at sec. 28-305 T.C.A. and the one year statute carried at sec. 23-1424 T.C.A.

The brief of defendant-in-error quotes from the Utah case of *Johnson v. Utah-Idaho Central Railway Company,* 68 Utah 309, 249 P. 1036, 1038. Its appropriateness is so apparent here as to make desirable this quotation therefrom:

"The general rule recognized by the great weight of authority appears to be that any damage to an abutting property owner from the operation of a railroad is a permanent damage, and, as stated by respondent—'must be reckoned from the time the road is constructed and put in operation, and that but one action can be maintained for such damages, and in such action damages past, present and prospective must be recovered,

and that the statute of limitations begins to run as soon as the road is constructed and put in operation.'

''The damage consequent upon the construction and operation of a railroad, especially for the hauling of freight in long freight trains, is so well known and understood that its effect upon the value of abutting property can well be estimated when the road is constructed and put in operation.''

The judgment of the Circuit Court will be affirmed with costs taxed to plaintiffs-in-error and their sureties.