# ETHEL R. CALDWELL v. KNOX CONCRETE PRODUCTS, INC. —391 S.W.(2d) 5.

Eastern Section. August 5, 1964.

Certiorari Denied by Supreme Court March 2, 1965.

394

Hodges, Doughty & Carson and John P. Davis, Jr., Knoxville, for plaintiff in error, Ethel R. Caldwell.

Donaldson, Montgomery & Kennerly, Knoxville, for defendant in error, Knox Concrete Products, Inc.

COOPER, J. This appeal is from the action of the trial judge in directing a verdict for the defendant, Knox Concrete Products, Inc., in an action brought by Ethel R. Caldwell to recover property damage allegedly resulting from the defendant's manufacturing operations.

The plaintiff is the owner and operator of the Colonial Tourist Court on Kingston Pike in Knoxville, Tennessee. The defendant owns and operates a concrete products plant on the property adjoining plaintiff's motel. In June, 1957, the defendant expanded its operations and constructed facilities for the making of concrete beams near the property line between plaintiff's and defendant's properties.

In her declaration, the plaintiff averred that noise from the expanded operations was of such nature and intensity that it materially interfered with the use and enjoyment of her property as a home and a motel and constituted an actionable nuisance.

The defendant filed a plea of not guilty, and specially plead the three year statute of limitations as a bar to the plaintiff's action.

It was conceded by the plaintiff during the trial that she could recover only if the noise complained of consti-

tuted a temporary nuisance, and that her damages, if any, would be limited to those occurring after March 14, 1960, since suit was not filed until March 14, 1963.

On motion of the defendant made at the conclusion of all the evidence, the Court peremptorily instructed the jury to return a verdict in favor of the defendant on the ground that there was no evidence upon which a jury verdict in favor of the plaintiff could be predicated. In doing so, the trial judge stated, among other things, that:

"As a matter of law this is shown to be, if a nuisance at all, a permanent nuisance, and more than three years having elapsed since it began * * * [June, 1957] * * * this case is barred by the Statute of Limitations of three years, and that the plaintiff cannot recover."

Plaintiff filed a motion for new trial and, when it was overruled, appealed assigning the court's action as error.

The record shows that the motel, now owned by the plaintiff was constructed in the early 1930's. Plaintiff bought the motel property in 1953 and operated the motel with increasing success through 1957, catering to the commercial trade and those tourists who sought inexpensive but clean accommodations. Thereafter, the receipts from the business showed a marked decrease yearly until 1963, when plaintiff closed the motel.

The defendant company began operations in 1943 on a nine acre tract of land adjacent to plaintiff's motel. The tract was zoned for industrial uses, and was in the midst of commercial activity, viz., restaurants with drive-in service, liquor stores, and a miniature golf course, many of which operated late at night.

In 1957 defendant expanded its plant and constructed three beam beds and two prestress beam beds adjacent

to plaintiff's motel. These beds are used to form concrete beams and they range in length from 140 feet to 200 feet. A building was constructed at the northern end of the beds to house materials and a heater with a pump attachment to circulate hot oil through the beam beds to aid in curing the concrete.

There is considerable noise attendant to the beam and prestress operation. In the normal cycle of operations, which began at 7:00 A.M. prior to the filing of this suit, one of the beds is stripped and poured in the morning and the other in the afternoon, each such process requiring approximately three and one-half to four hours for completion. In stripping a bed, defendant's employes are required to remove metal bulkheads from the ends of the completed beams. This is done by hammering—metal on metal—for approximately 20 minutes. The beams are then removed by use of mechanical carriers referred to as Karry Kranes. After the bed is stripped, reinforcing steel is installed for the next pour. The Karry Kranes are then used to bring the cement to the forms where vibrators (some of which are electric and some of which use a 2½ horsepower gasoline motor) are used to compact the concrete intermittently during the pouring process that requires one to one and one-half hours. After the concrete has been allowed to set for two or three hours, a heater is turned on to circulate hot oil through the forms for the purpose of properly completing the curing process. The gas-fired heater and the pump attachment are located in an open building and operate intermittently through most of each night following the pouring of the concrete beams.

Plaintiff testified that the noises from these operations prevented her from renting her motel rooms, and caused her to lose patrons of many years standing.

Several of these patrons testified that their rest was disturbed by the noises, particularly those in the early morning hours, and that they sought accommodations elsewhere.

The general manager of the defendant's plant described the manufacturing operation in detail, and testified that the methods used were those generally used in the trade, and that while noise, of necessity, accompanied the manufacturing operations, it was not excessive. On cross-examination, the general manager testified that the noise could be reduced.

(1) by using a steel bar to loosen cargo in the railroad cars rather than by vibrating the car or by beating the side of the car with a sledge hammer;

(2) by cleaning concrete from the beam bed area by hand rather than by use of bulldozers;

(3) by locating the heater and pump away from the curing beds and plaintiff's motel;

(4) by freeing the bulkheads used in the beam beds by the use of a steel bar rather than by hammering;

(5) by unloading the steel used in the beam beds at a location away from plaintiff's motel; and

(6) by using electric vibrators in place of the gasoline propelled vibrators on the beam beds.

The general manager insisted, however, that the reduction of the noise would not be economical, and would impair the defendant's position in a highly competitive market.

The general manager further testified that after the present suit was filed, the time of commencement of work in the concrete beam area was changed from 7:00 A.M. to 8:00 A.M.

Other employes of the defendant company were called to testify concerning the methods used by defendant in its manufacturing operations, and to testify that the plaintiff had not complained of the noise prior to filing suit, except as to the noise from a warning whistle on the oil pump attachment, and that this had been corrected by the substitution of a warning light.

The defendant also introduced in evidence the testimony of Mr. R. J. Coker, an industrial sound engineer, and Mr. J. W. Barnes. Mr. Coker, who conducted sound-meter tests on plaintiff's property at the request of the defendant, testified that the operation of the heater and pump at night caused a measurable sound difference inside only two of the plaintiff's motel units, that the slight noise was not objectionable and was cancelled out entirely when the motel air conditioner was operating. Mr. Coker also testified that while the sound tests made during the daytime operations of the defendant's plant showed that the plant noises were discernible in the motel units, the operation of the plant without the use of vibrators was not objectionable at all and that the operation of the air conditioners cancelled out most of the vibrator noise. Mr. Coker further testified that the tests showed that the noise caused by a passing train or by starting a room air conditioner was louder than the noise resulting from the daytime operation of the defendant's plant.

Mr. J. W. Barnes, a former patron of plaintiff's motel, testified that the noises from defendant's plant opera-

tions did not disturb his rest while he occupied a cabin near the prestress beam area.

■■ A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. Adams v. Hamilton Carhartt Overall Co., 293 Ky. 443, 169 S.W.(2d) 294. In City of Nashville v. Nevin, 12 Tenn.App. 336, it was said that a nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property. See also Williams v. Cross, 16 Tenn.App. 454, 459, 65 S.W.(2d) 198.

■ What is a reasonable use of one's property and whether a particular use is an unreasonable invasion of another's use and enjoyment of his property cannot be determined by exact rules, but must necessarily depend upon the circumstances of each case, such as locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like. See Clinic & Hospital v. McConnell, 241 Mo.App. 223, 236 S.W.(2d) 384, 23 A.L.R.(2d) 1278; Restatement, Torts, Secs. 822, 831, pp. 214, 265.

■ Generally, noise is not a nuisance per se for it is recognized that no one is entitled to absolute quiet in the enjoyment of his property, but may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells or has his business. Collins v. Wayne Iron Works, 227 Pa. 326, 76 A. 24, 19 Ann.Cas. 991. See also Hannum v. Gruber, 346 Pa. 417, 31 A.(2d) 99; 66 C.J.S. Nuisance

sec. 22a. However, noise may constitute a nuisance in fact even though it arises from the operation of a factory, industrial plant or other lawful business or occupation. Phelps v. Winch, 309 Ill. 158, 140 N.E. 847, 28 A.L.R. 1169; Warren Co. v. Dickson, 185 Ga. 481, 195 S.E. 568; Magel v. Gruetli Benevolent Society of St. Louis, 203 Mo.App. 335, 218 S.W. 704; Payne v. Johnson, 20 Wash. (2d) 24, 145 P.(2d) 552; 30 Am.Jur., Nuisance, Sec. 47, p. 330. The test in such cases is "whether rights of property, of health or of comfort are so injuriously affected by the noise in question that the sufferer is subjected to a loss which goes beyond the reasonable limit imposed upon him by the condition of living, or of holding property, in a particular locality in fact devoted to uses which involve the emission of noise although ordinary care is taken to confine it within reasonable bounds; or in the vicinity of property of another owner who though creating a noise is acting with reasonable regard for the rights of those affected by it." Tortorella v. H. Traiser & Co., 284 Mass. 497, 188 N.E. 254, 90 A.L.R. 1203. See also City of Chicago v. Reuter Bros. Iron Works, Inc., 398 Ill. 202, 208, 75 N.E.(2d) 355, 359, 173 A.L.R. 266.

As stated in 39 Am.Jur., Nuisances, Sec. 45, pp. 327-328:

"The law takes care that lawful and useful business shall not be [adversely affected] on account of every trifling or imaginary annoyance, such as might offend the taste or disturb the nerves of a fastidious or over refined person. But on the other hand, it does not allow anyone, whatever his circumstances or conditions may be, to be driven from his home or compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity."

As shown above, the evidence relating to the intensity of the noise from defendant's manufacturing operations, its effect on plaintiff's business, and the ability of the defendant to abrogate or reduce the noise is in conflict. In our opinion, in resolving the conflicts and in passing on the credibility of witnesses, reasonable minds might disagree as to whether the noise from defendant's manufacturing operations subjected the plaintiff to a loss which went beyond the reasonable limit imposed upon her by the condition of owning property in the vicinity of defendant's plant and constituted a nuisance in fact, or whether the noise was consistent with the standard of comfort prevailing in the locality of plaintiff's business for which there would be no liability.

The defendant, in its brief, stresses the evidence of the sound-meter, the zoning regulations, and other noises in the neighborhood, and argues that no reasonable person could find from all the evidence that the limited noise resulting from the defendant's operations amounted to an actionable nuisance. We think the argument has merit, but is one that should be presented to the trier of fact. We are required, in passing upon the propriety of the trial court's action in directing a verdict for defendant, to take the strongest legitimate view of all the evidence favorable to the plaintiff, to assume the truth of all that tends to support plaintiff's theory of the case, and to discard all evidence to the contrary; and, if, after so viewing the evidence, we find there is any material evidence to support a verdict for the jury, we must hold that the case should have been submitted to the jury. Oder v. Parks, 34 Tenn.App. 305, 237 S.W. (2d) 571; East Tennessee Natural Gas Co. v. Peltz, 38 Tenn.App. 100, 270 S.W.(2d) 591; D. M. Rose & Co. v.

Snyder, 185 Tenn. 499, 508, 206 S.W.(2d) 897, 901 and cases there cited.

"The rule is well settled that where there are conflicts in the evidence, this Court cannot assume the duty of determining liability or non-liability in tort actions but must leave such duty with the jury as the triers of facts. Jackson v. B. Lowenstein & Bros., 175 Tenn. 535, 136 S.W.(2d) 495. Only where one conclusion can be reasonably reached from the evidence and inferences is it proper for a trial court to direct a verdict. Coca Cola Bottling Works v. Selvidge, 4 Tenn.App. 558; Supreme Liberty Life Ins. Co. v. Pemelton, 24 Tenn. App. 576, 148 S.W.(2d)1. And where there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from all the evidence, a motion for a directed verdict must be overruled. Lackey v. Metropolitan Life Ins. Co., 30 Tenn.App. 390, 206 S.W.(2d) 806." East Tennessee Natural Gas Co. v. Peltz, 38 Tenn.App. 100, 270 S.W.(2d) 591, 597.

We think, therefore, that the issue of whether the noise from defendant's plant operations constituted a nuisance in fact should have been submitted to the jury.

We also are of the opinion that the issue of whether the nuisance, if found to exist, was permanent or temporary and, consequently, whether the plaintiff's cause of action was barred by the three year limitation on actions to recover damages to real property (T.C.A. sec. 28-305), was a question of fact for the jury.

A "temporary nuisance" has been defined by the Supreme Court of this State as one that can be corrected by the expenditure of labor or money. Nashville v. Comar, 88 Tenn. 415, 12 S.W. 1027. See also Signal

Mountain Portland Cement Company v. Brown, 6 Cir., 141 F.(2d) 471. Where the nuisance is temporary, the damages to plaintiff's property are recurrent and may be recovered from time to time until the nuisance is abated. Louisville & N. Terminal Company v. Lellyett, 114 Tenn. 368, 403, 85 S.W. 881, 890, 1 L.R.A.,N.S., 49.

■ "It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, when the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; [A]nd that, where the cause of the injury is one not presumed to continue, that the damages recoverable from the wrong-doer are only such as have accrued before action [is] brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance." Nashville v. Comar, 88 Tenn. 415, 426, 12 S.W. 1027, 1030.

■ Where an activity or business operation creating the nuisance is of such a character that it will be presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it, the nuisance is permanent, and the statute of limitations begins to run against the plaintiff's cause of action from the time of the complete creation of the nuisance. See Robertson v. Cincinnati, New Orleans & Texas P. Ry. Co., 207 Tenn. 272, 339 S.W.(2d) 6; 39 Am.Jur., Nuisances, Sec. 131, p. 391; 66 C.J.S. Nuisances sec. 5, p. 735.

■ The evidence set out above shows several steps that the defendant could take to reduce the noise from its operation. Looking at this evidence in the light most favorable to the plaintiff as we must do, we think a trier of fact could well find that the noise from defendant's

operation could be abated or be materially reduced, and that the nuisance was temporary and, consequently, not barred by the statute of limitations.

Defendant strongly urges that negligence is an essential element of a temporary nuisance where the plaintiff relies on the theory of recurring wrongful acts to avoid the effect of any applicable statute of limitation. We can not agree. Admittedly, where the nuisance is created by the negligent operation of a business, it is a wrong within the power of the defendant to correct by operating in a non negligent manner and is, therefore, a temporary nuisance. Robertson v. Cincinnati, New Orleans & Texas P. Ry. Co., 207 Tenn. 272, 339 S.W.(2d) 6; Louisville & N. Terminal Company v. Lellyett, 114 Tenn. 368, 403, 85 S.W. 881, 890, 1 L.R.A.,N.S., 49. However, it does not follow that *only* those nuisances created by the negligent acts of the defendant are temporary. The test, as heretofore set out, is whether or not the nuisance can be corrected by the expenditure of labor or money.

Defendant also insists that the plaintiff failed to introduce ''sufficient evidence showing damages * * * from any noise from defendant's plant'' to sustain a verdict for the plaintiff, and that the trial judge's action in directing a verdict for the defendant therefore was proper.

''For temporary or recurring nuisance, damages may be recovered from time to time for impairment of the use and enjoyment of the property; and the measure of such damages will be the injury to the value of the use and enjoyment, which may be measured to a large extent, by the rental value of the property, and to what extent that rental value is diminished.'' City of Murfrees-

boro v. Haynes, 18 Tenn.App. 653, 82 S.W.(2d) 236 and cases there cited.

The record shows that Mr. Jack Fletcher, a qualified real estate appraiser in the Knoxville area, testified that prior to the expansion of defendant's manufacturing operations in 1957, plaintiff's motel had a yearly rental value of $3900.00; thereafter, the rental value was nil. The method used to determine the rental value of the property was "the normal approach for income producing property [which] is to capitalize net income to determine its value."

Plaintiff testified that the sharp decline in motel receipts between 1957 and the 1958-1963 period was due to her inability to rent the cabins located near the prestress beam beds, and the loss of regular patrons who objected to having their rest interrupted by noise from defendant's expanded operations, especially those occurring in the early morning hours.

We think the above evidence of damages requires the submission of the issue to the jury.

Defendant, in its brief, points to evidence that the cabins had not been kept up, the building of other motels in the vicinity, the death of the plaintiff's husband, etc., and insists that "no reasonable person would conclude from the evidence in this case that the plaintiff's loss of business was due to noise from the defendant's plant." As heretofore noted, our duty, in reviewing the trial court's action in directing a verdict for the defendant, is merely to decide if there is any material evidence to support a verdict for the plaintiff—for, if there is, the case must be submitted to the jury.

In accordance with the above, the judgment of the trial court is reversed and the cause is remanded for a new trial. Costs incident to the appeal are adjudged against the defendant, Knox Concrete Products, Inc.

McAmis, P. J., and Parrott, J., concur.