IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 20, 2011 Session

## CHANDRA PEARSON V. VICTOR ROSS

**An Appeal from the Shelby County Chancery Court**
**No. CH1020491      Walter L. Evans, Chancellor**

**No. W2011-00321-COA-R3-CV - Filed December 28, 2011**

This appeal involves a nuisance claim. The parties own adjoining homes in a neighborhood of zero-lot line homes. The defendant's air conditioning condenser unit is outside his home, between the parties' homes. The plaintiff filed this lawsuit against the defendant, alleging that the noise of the defendant's air conditioning unit constituted a nuisance, and seeking abatement of the nuisance, money damages, and injunctive relief. After a bench trial, the trial court held in favor of the defendant. The plaintiff now appeals. We affirm.

**Tenn. R. App. P. 3(d) Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Prince C. Chambliss, Jr., Memphis, Tennessee, for the Plaintiff/Appellant Chandra Pearson.

William G. Hardwick, II, Memphis, Tennessee, for the Defendant/Appellee Victor Ross.[1]

### OPINION

#### FACTS AND PROCEEDINGS BELOW

In June 2007, Plaintiff/Appellant Chandra Pearson ("Pearson") moved into her residence on Charlton Way in Cordova, Tennessee. The neighborhood is a zero-lot line community, in which the homes are approximately seven feet apart. After Pearson moved into her home,

_____

[1]Defendant, Victor Ross, represented himself in the proceedings below. Attorney Hardwick was retained to represent him on appeal.

she noticed that the air conditioning condenser unit ("AC unit") for the adjoining homeowner, placed between their homes directly outside Pearson's bedroom, was unduly noisy. The problem was not resolved before the next-door neighbor moved from the home.

In June 2008, Defendant/Appellee Victor Ross ("Ross") moved into the residence next-door to Pearson, on Charlton Way. After Ross had lived in the home for a few months, Pearson placed a letter in Ross's door, demanding that he move the AC unit to the other side of his house. After this letter was ignored, Pearson re-sent the letter to Ross via certified mail. Ross responded with a letter declining to move the AC unit, because he believed it was not illegal, and noting that the unit was there when he purchased the home. Further attempts to resolve the matter were unsuccessful.

On November 9, 2010, Pearson filed this lawsuit against Ross in the Chancery Court of Shelby County, Tennessee for abatement of a nuisance. The complaint alleged that Ross's AC unit constituted a nuisance, in that it was unreasonably loud and was run for an unreasonably long duration. The complaint alleged that the noise from the AC unit violated "national standards" and would disturb a person "with normal sensibilities." The complaint sought injunctive relief, and compensatory and punitive damages totaling $33,300.

Upon the filing of the complaint, Pearson obtained a temporary restraining order enjoining Ross from using his AC unit. Pearson's complaint asked the trial court to schedule a hearing on her request for temporary injunctive relief, pending the trial. The requested hearing was scheduled for November 22, 2010.

On the scheduled hearing date, Pearson was represented by counsel, and Ross elected to proceed *pro se*. At the outset of the hearing, counsel for Pearson sought to obtain Ross's consent to continue the injunction prohibiting him from using his AC unit, pending a trial on the merits. In doing so, Pearson's counsel stated:

> [W]e intend to set this matter for trial. I'm going to go across to the clerk's office.
> There is no proof necessary. We have the plaintiff in the courtroom. We have an expert witness, and we're prepared to go to trial as soon as the Court can accommodate us.
> * * *
> Now, plaintiff is prepared today, Your Honor, to testify. We have our expert witness here. We're prepared to put on all the proof necessary, we believe, to warrant this Court in entering a preliminary injunction, a temporary injunction to keep the matter status quo.

Ross declined to agree to continue the injunction, as it prevented him from using his AC unit, and told the trial court he would "rather we just get this out of the way and done with. . . . I don't know what [Pearson is] expecting me to do, but I've got as much as I can get to defend myself." The trial court apparently agreed and instructed Pearson's counsel to commence with the trial and put on his proof. Pearson's counsel did so, without objection.

Pearson testified first, on her own behalf. She noted that, when she purchased her home, the seller gave her a disclosure statement indicating that the home had no neighborhood noise problems. Despite this, to Pearson's chagrin, the first night Pearson spent in her home, she heard a continual rumbling noise that she later determined was emanating from the AC unit of the adjoining home, which was later purchased by Ross. Pearson's initial efforts to obtain assistance regarding the noisy AC unit from Shelby County code enforcement officials proved unsuccessful.

After Ross purchased the home next door with the offending AC unit, Pearson said, she wrote a letter to him asking him to relocate the AC unit. When she received no response, she re-sent the letter via certified mail. Ross declined to move the unit. She complained that Ross ran his AC unit even when the outside temperature was below 60 degrees.

Pearson testified at some length about her efforts to record and measure the noise from Ross's AC unit with a noise measuring device that she acquired, and testified that the noise level inside her bedroom exceeded "national standards." Pearson introduced into evidence two videos she recorded, which she narrated, and various photographs she took of Ross's home and the adjoining property. She described her conversations with acoustics experts and her efforts to soundproof her bedroom. Pearson also recounted her contacts to various government officials, including city and county officials, the mayor, the judge of the local environmental court, and State officials in Nashville. She described her conversations with her psychologist about her stress and anxiety from living with the noise from Ross's AC unit, and submitted into evidence her medical records. Pearson said that Ross was not "considerate" and not a "good neighbor," and testified that he left grass clippings on her property after he mowed his lawn.

Pearson also submitted the testimony of an expert in acoustics. He opined that the noise from Ross's AC unit was "above that which the ordinary, reasonable person would be able to tolerate."

Ross testified on his own behalf. He said he had a heating and air conditioning company check his AC unit and he was told that it was running properly. Ross noted that Pearson moved to her home before he moved to the neighborhood, and the same AC unit was there when he moved in.

Ross described Pearson's numerous complaints about a host of unrelated issues, such as persons parking close to a fire hydrant, grass on his property that was allegedly too high, grass clippings when the lawn was cut, a tent in his backyard for his young son, his car alarm, and the like. He said that Pearson harassed him by contacting a variety of authorities, such as code enforcement authorities, vector control, and the Sheriff's Department, and by constantly staring out her door at Ross's family and guests in an intimidating manner.

Ross submitted the testimony of a former neighbor. The neighbor testified that Pearson complained constantly about perceived problems with her small dog barking inside her home or how her grass was cut, and repeatedly reported her to the police and submitted a complaint to the environmental court about the dog barking in her home. After a hearing, she said, the judge of the environmental court told Pearson she had unusually sensitive hearing. Prior to Pearson moving into the neighborhood, the neighbor said, all of the neighbors would socialize in their yards and be friendly; this changed after Pearson moved in, put up "no-trespassing" signs in her yard, and put cameras in her windows to record the activities outside. After living in the neighborhood for eight years, the neighbor testified, once Pearson moved into the neighborhood, the neighbor sold her home for less than it was worth in order to move away from Pearson.

At the conclusion of the evidence, the trial court issued an oral ruling that Ross's AC unit was not a nuisance. After reviewing the evidence, the trial court noted that the offending AC unit was there when Pearson moved into her home, and that Ross did not change it after he later moved into his home. The trial court also looked to the receipt that the HVAC company provided to Ross, which indicated that the unit was running normally. The trial judge considered all of this evidence that the noise emitted from the AC unit was not unreasonable, and that the noise level was no different from what it was when Pearson purchased her home, before Ross moved into his home. The trial court noted the testimony of neighbors who perceived Pearson to be "oversensitive." Based on all of the evidence, the trial court found that Pearson had not met her burden of proof to establish a nuisance and dismissed Pearson's petition. From this order, Pearson now appeals.

### ISSUES ON APPEAL & STANDARD OF REVIEW

On appeal, Pearson raises the following issues:

> (1) This Court should reverse the Trial Court's finding that there is no nuisance to be abated because he erred in disregarding scientific proof and expert witness testimony and instead relied upon inadmissible incompetent opinion testimony of lay witnesses and hearsay statements contained in inadmissible documents.

-4-

(2) This Court should reverse the Trial Court's finding that there is no nuisance to be abated because, even viewing the facts most favorably in support of the findings, a preponderance of the admissible credible evidence clearly shows that the Trial Judge erred when he found that the noise emitted by the air condenser unit complained of by Plaintiff does not constitute a nuisance and should not be abated.

Generally, we review a trial court's factual findings *de novo* on the record, presuming those findings to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another factual finding with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***Realty Shop, Inc. v. RR Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law *de novo*, with no such presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). Determinations of the witnesses' credibility by a trial judge are given great weight on appeal, and will not be reversed in the absence of clear and convincing evidence to the contrary. ***Hughes v. Metro. Gov't of Nashville & Davidson Co.***, 340 S.W.3d 352, 360 (Tenn. 2011); ***Larsen-Ball v. Ball***, 301 S.W.3d 228, 235 (Tenn. 2010).

### ANALYSIS

Pearson argues first that the trial court erred in basing its decision on inadmissible hearsay, lay opinion, and other improper evidence. In response, Ross points out that there was no objection to such evidence in the trial court.

As a general rule, the failure to "make a timely, specific objection in the trial court prevents a litigant from challenging the introduction of inadmissible evidence for the first time on appeal." ***Wright v. United States Auto. Ass'n***, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990) (citations omitted); *see* Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(b). The rationale for this rule has been explained as follows:

> Any other rule would result in setting a trap for the other side of the controversy. When objection is made to evidence, and specified, this notification may enable opposing counsel to obviate it, and thus make the evidence competent, but, if the party making an erroneous objection should be allowed to withhold a good objection and make that in the appellate court, where there can be no possibility of avoiding the difficulty by other evidence, this would give a very great advantage to the party so

withholding his real objection, and result in corresponding disadvantage and injustice to the opposing litigant.

***Welch v. Bd. of Prof'l Responsibility for the Supreme Court of Tenn.***, 193 S.W.3d 457, 464 (Tenn. 2006) (quoting ***Mid-Tenn. R.R. Co. v. McMillan***, 184 S.W. 20, 24 (Tenn. 1916)). Failing to object to the evidence at the trial court level constitutes a waiver of the issue for purposes of appeal. ***See Lobertini v. Brown***, No. M2006-01485-COA-R3-JV, 2008 WL 275883, at *3 (Tenn. Ct. App. Jan. 31, 2008).

In the absence of an objection, the trial court is within its discretion to consider and rely on the evidence. This Court has held that when a party fails to object to the admissibility of evidence, "the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the [trier of fact] may consider that evidence for its 'natural probative effects as if it were in law admissible.' " ***Dixon v. Cobb***, No. M2006-00850-COA-R3-CV, 2007 WL 2089748, at *8 (Tenn. Ct. App. July 12, 2007) (citing ***State v. Smith***, 24 S.W.3d 274, 280 (Tenn. 2000)).

It is undisputed that Pearson did not object to any of the disputed evidence at the trial. Thus, any objections to the evidence are waived on appeal.

Pearson next argues that the trial court erred in conducting the trial on the merits less than a month after her complaint was filed. She argues that this precluded discovery and proper trial preparation, and resulted in "trial by ambush." Again, Pearson did not object or ask for a continuance when Ross, proceeding *pro se*, asked the trial court to "just get this out of the way and done with." Indeed, not only did Pearson fail to object to proceeding with the trial on the merits, counsel's opening statement could only have left the trial judge with the impression that Pearson was prepared to put on her evidence that day and desired to try the case as soon as possible. Under these circumstances, we find that any objection to holding the trial on the date of the hearing on temporary injunctive relief was waived as well.

Acknowledging her failure to object to the disputed evidence or to the trial court's decision to conduct the trial on the merits, Pearson asks this Court to nevertheless consider these issues on appeal under the "plain error" doctrine. Under Rule 103(d) of the Tennessee Rules of Evidence and Rule 36(b) of the Tennessee Rules of Appellate Procedure, this Court may "take notice of 'plain errors' that were not raised in the proceedings below." ***Smith***, 24 S.W.3d at 282; *see* Tenn. R. Evid. 103(d); Tenn. R. App. P. 36(b). Any consideration of a "plain error" lies within the discretion of the appellate court. ***State v. Bledsoe***, 226 S.W.3d 349, 354 (Tenn. 2007). Moreover, Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure give the appellate court the discretion to consider issues that have not

been properly presented, in order to achieve fairness and justice. ***Heatherly v. Merrimack Mut. Fire Ins. Co.***, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000).

It is well established that the plain error doctrine is not applicable when the record reflects that the party raising the issue on appeal made a deliberate, tactical choice to waive an objection. ***Smith***, 24 S.W.3d at 283 (citing ***State v. Walker***, 910 S.W.2d 381, 399 (Tenn. 1995) (Anderson, C.J., concurring)). In the case at bar, Pearson was represented by experienced, capable trial counsel, and came to court armed with not only plaintiff Pearson, but also photographs, decibel meter measurements of the sound from Ross's AC unit, two videotapes, and live opinion testimony from an acoustics expert. In response to the trial judge's inquiry, Ross indicated that his efforts to secure counsel had been unsuccessful, and he intended to proceed *pro se*. We can only surmise that, although the suggestion to go ahead with the trial on the merits came from Ross, Pearson and her counsel made a strategic decision in the moment that it was to Pearson's advantage to acquiesce in Ross's suggestion.

Similarly, as to Pearson's failure to object at the trial level to the disputed evidence, we note that the transcript of the trial reveals that there were no objections by *either* party to *any* of the evidence presented. Moreover, Pearson's evidence in her case in chief was replete with potentially objectionable evidence. This included potentially objectionable statements in the disclosure form from the seller of Pearson's home to the effect that there were no noise problems, the content of Pearson's discussions with various government officials about Ross's AC unit and documents from those officials, statements by Pearson's psychologist and her medical records from the psychologist, and Pearson's "narration" of her home videos, in which she accuses Ross of violating a court order and disparages him as "ridiculous" and "crazy." It also includes Pearson's home decibel meter readings, her testimony about a repair shop's testing of her home decibel meter, and her lay opinion testimony about "normal" decibel noise levels and unspecified "national standards" for noise levels. Ross, proceeding *pro se*, did not object to any of this evidence, and in turn Pearson's counsel did not object to any of Ross's testimony or to the testimony of his neighbor witness. Again, Pearson was represented by seasoned trial counsel, and we can only surmise that he and Pearson made a strategic decision not to object to Ross's testimony in the belief that acquiescing in a courtroom environment in which there were essentially no barriers to the admission of evidence would ultimately inure to Pearson's benefit.

In light of this, we respectfully decline to exercise our discretion to consider these issues on appeal despite the failure to object. We find that these issues are waived on appeal.

Apart from the evidentiary and procedural issues, Pearson argues that the evidence at trial preponderates against the trial court's finding that she did not meet her burden of proving that Ross's AC unit constituted a nuisance. Pearson points to the videos she submitted into

evidence and the opinion testimony from her expert as showing that Ross's AC unit was unacceptably loud. Pearson contends that the trial court's observation that Ross's AC unit was there when Pearson moved in and that Ross did not do anything to exacerbate the noise indicates that the trial court "missed the entire point of the claim." Pearson argues that a court in British Columbia, Canada awarded relief to plaintiffs with a similar claim in *Suzuki v. Munroe*, 2009 BCSC 1403 (B.C. Sup. Ct. Oct. 14, 2009) (cited in Appellant's Brief), and notes that, under Tennessee law, a nuisance may arise from lawful activities where it disturbs the free use of another's property or renders its occupation unreasonably uncomfortable, citing *Caldwell v. Knox Concrete Prod., Inc.*, 391 S.W.2d 5, 9-10 (Tenn. Ct. App. 1964).

As a general proposition, noise is not a nuisance *per se* because "no one is entitled to absolute quiet in the enjoyment of his property." *Bivens v. Ballenger,* No. 1, 1990 WL 182256, at *4 (Tenn. Ct. App. Nov. 28, 1990) (citing *Caldwell*, 391 S.W.2d at 9). Lawful activities are not to be adversely affected "on account of every trifling or imaginary annoyance, such as might offend the taste or disturb the nerves of a fastidious or over refined person." *Herrell v. Roane Co.,* No. 151, 1989 WL 108588, at *2 (Tenn. Ct. App. Sept. 21, 1989); *Caldwell*, 391 S.W.2d at 10.

In order to be considered a nuisance, "noise must be so excessive that it is unreasonable in light of all the circumstances and must cause injury to the health and comfort of ordinary persons in the vicinity." *West v. Luna*, No. 01A01-9707-CH-00281, 1998 WL 467106, at *4 (Tenn. Ct. App. Aug. 12, 1998) (citing *Gardner v. International Shoe Co.,* 49 N.E.2d 328, 335 (Ill. App. Ct. 1943); *Strough v. Ideal Supplies Co.,* 187 S.W.2d 839, 841 (Ky. Ct. App. 1945); *Rose v. Chaikin,* 453 A.2d 1378, 1381 (N.J. Super. Ct. Ch. Div. 1982)). The determination of whether a particular noise constitutes a nuisance should not be based on the subjective sensitivities of particular plaintiffs, but rather on an objective standard based on reasonableness. *West*, 1998 WL 467106, at *4 (citing *Burgess v. Omahawks Radio Control Org.*, 362 N.W.2d 27, 29 (Neb. 1985); *Stiglianese v. Vallone,* 666 N.Y.S.2d 362, 364 (App. Term 1997); *Atkinson v. Bernard,* 355 P.2d 229, 233 (Or. 1960)). "Whether a particular noise is sufficiently excessive to constitute a nuisance is ordinarily a question of degree and locality—in essence a question of fact to be considered in light of all the attending circumstances." *West*, 1998 WL 467106, at *4 (citing *Caldwell,* 391 S.W.2d at 9)).

In the case at bar, the trial court's holding that the noise from Ross's AC unit did not rise to the level of a nuisance was based in large part on his assessment of the credibility of the witnesses who testified at trial. Trial courts, of course, are best situated to determine the credibility of the witnesses and to resolve factual disputes hinging on credibility determinations. *Hughes*, 340 S.W.3d at 360. Accordingly, a trial court's credibility determinations are afforded great deference on appeal. *Hughes*, 340 S.W.3d at 360; *Larsen-*

***Bell***, 301 S.W.3d at 235. Here, there is no basis in this appellate record for questioning the trial court's assessment of the credibility of these witnesses.

Having reviewed the evidence in the record with appropriate deference to the trial court's credibility determinations, we must respectfully disagree with Pearson's assertion that the evidence preponderates against the trial court's conclusion. There is ample evidence to support the inference that Pearson was "oversensitive" to noise, that the noise that emitted from Ross's AC unit was not considered unreasonable before Pearson purchased her home, that Ross had done nothing to increase the noise level, and that the unit was bothersome to Pearson because she was overly sensitive. We find that the evidence preponderates in favor of the findings of the trial court, and so affirm.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Chandra Pearson and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE