IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 13, 2018 Session

## KMI GROUP, INC., ET AL. v. WADE ACRES, LLC, ET AL.

**Appeal from the Circuit Court for Obion County**
**No. 2016-CV-50     Jeff Parham, Judge**

_____

**No. W2018-00301-COA-R3-CV**

_____

In this action to recover for property damage sustained as a result of flooding and seeking injunctive relief, the trial court held that the statutes of limitations and repose barred Plaintiffs' claims for nuisance and negligent construction of a levee, that Plaintiffs did not prove certain elements of their claims for negligence or willful and wanton conduct, and that no civil conspiracy existed; the court granted summary judgment to Defendants. Plaintiffs appeal. Upon review, we reverse the grant of summary judgment with respect to the nuisance and negligence claims, and remand the case for further proceedings; we affirm the judgment with respect to the civil conspiracy claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. joined. BRANDON O. GIBSON, J., not participating.

James M. Smith, Paris, Tennessee, for the appellants, KMI Group, Inc., Summit Properties Holding, LLC, and Summit Equipment, LLC.

Paul M. Buchanan, Nashville, Tennessee, for the appellees, Wade Acres, LLC, Will Wade, and Rance Barnes.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The lawsuit arises out of damage sustained by KMI Group, Inc., ("KMI"), which manufactures and compounds plastic resins at a facility located at 320 N. Main Street in Kenton, Obion County, Tennessee, when its facility flooded during a period of heavy rainfall in March 2016; the flooding caused damage to the property, inventory, and

equipment, resulting in the loss of substantial revenue.  Summit Properties Holding, LLC, owns the property and facility where KMI operates, and Summit Equipment, LLC, owns the equipment used by KMI.  The property on which the facility is located adjoins a parcel of property owned by the City of Kenton that contains a sewage lagoon.  On the other side of the City's property is farmland owned by Wade Acres, LLC ("Wade Acres").  A dirt levee is located on Wade Acres' land, near the line between the City's property and Wade Acres' property.[1]

On December 22, 2016, KMI, along with Summit Properties Holding and Summit Equipment (collectively, "Plaintiffs"), filed suit against Wade Acres, LLC, Will Wade, and Rance Barnes ("Defendants" herein),[2] and the Obion County Emergency Management Agency.[3]  Plaintiffs alleged that "[o]n March 10, 2016, the Plaintiffs noticed that the natural flow of water from rain and/or the Obion River was backing up toward the KMI manufacturing facility . . . because Defendants had constructed and/or maintained a levee prohibiting the natural flow of drainage water."  The complaint alleged that the Defendants were strictly liable for interfering with the natural flow of the river by building and maintaining the levee; that Defendants were negligent in their construction of the levee; that the improper construction of the levee created a temporary and continuous nuisance; and that Defendants engaged in willful or wanton misconduct and a civil conspiracy by refusing to breach the levee.  Plaintiffs sought damages in the amount of $8,822,033.00 and an injunction "to assure that the illegally built levee is removed or modified to allow for proper and natural water flow."

Defendants answered, denying liability and asserting numerous affirmative defenses, including the three-year statute of limitations for property tort actions at Tennessee Code Annotated section 28-3-105 and the four-year statute of repose for actions to recover for alleged negligence in the design and/or construction of an improvement to real property at section 28-3-202.[4]  Defendants subsequently moved for summary judgment, contending that the negligence, nuisance, and strict liability claims were barred by the statutes of limitations and/or repose, and that they were entitled to

---

[1] A map showing the parcels of property and levee (the location of which is indicated with "XXX"), which was introduced as part of the record in this case, is appended to this opinion.

[2] Mr. Wade and Mr. Barnes were members or directors of Wade Acres, LLC.

[3] The Obion County Emergency Management Agency was dismissed from the suit pursuant to its motion and is not a party to the appeal.

[4] The defendants moved to amend their answer to raise the Farm Protection Act, specifically, Tennessee Code Annotated section 43-26-103, as an additional affirmative defense, but subsequently struck the motion.  After the hearing on the motion for summary judgment, but before the order granting summary judgment was filed, the defendants filed another motion to amend identical to the first; no order on this motion appears in the appellate record.

judgment as a matter of law because "no viable cause of action is stated for 'refusal to breach' the levee" and because "there is no justiciable claim for 'willful and wanton misconduct/civil conspiracy.'"

After a hearing, the court entered an order making findings of fact and granting the motion. The Plaintiffs appeal, raising the following issues for our review:

1. Whether the Obion Circuit Court erred in granting Defendants' motion for summary judgment in holding that Plaintiffs' claims were barred by the statute of limitations?
   A. Whether the Obion Circuit Court erred in holding that Plaintiffs' claims accrued in 2010 as a matter of law?
   B. Whether the Obion Circuit Court erred in holding that the levee at issue was a permanent nuisance as a matter of law?

2. Whether the Obion Circuit Court erred in granting Defendants' motion for summary judgment in holding that the Plaintiffs' claims are barred by the statute of repose?

3. Whether the Obion Circuit Court erred in holding, as a matter of law, that Defendants were not negligent and did not breach any duty to construct, repair, and/or maintain the subject levee?

4. Whether the Obion Circuit Court erred in holding that as a matter of law no Defendants were willful or wanton in construction, repair and/or maintenance of the subject levee?

5. Whether the Obion Circuit Court erred in holding that judgment was to be granted in favor of Defendants on Plaintiffs' claim for injunctive relief?

## II. STANDARD OF REVIEW

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Our Supreme Court has held:

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production by either (1) affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the moving party's evidence *at the summary judgment stage* is insufficient to establish the

3

nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. . . .

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264-65 (Tenn. 2015).

This court reviews the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye,* 477 S.W.3d at 250 (citing *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). "However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition." *Moore v. City of Clarksville*, No. M2016-00296-COA-R3-CV, 2016 WL 6462193, at \*3 (Tenn. Ct. App. Oct. 31, 2016). To the contrary,

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Moore*, 2016 WL 6462193, at \*3 (quoting *EVCO Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975)).

## III. ANALYSIS

Defendants moved for summary judgment on the following grounds:

[N]one of the Defendants constructed the levee at issue, this action is barred

4

by the applicable statute of limitations and the statute of repose, no viable cause of action is stated for "refusal to breach" the levee, and there is no justiciable claim for "willful and wanton misconduct/civil conspiracy." Further, Defendants contend that, by operation of law, the levee in question is subject to a prescriptive easement.

The motion was accompanied by a statement of undisputed facts in accordance with Tennessee Rule of Civil Procedure 56.03 and other materials; Plaintiffs responded to Defendants' Rule 56.03 statement and submitted their own statement, supported by affidavits and other exhibits.[5] Defendants then filed an additional statement, to which Plaintiffs responded.

In its ruling on the motion, the trial court held:

- that Plaintiffs were on notice of the potential for future flooding on their property following a flood event in 2010; consequently, their claim arising from allegedly negligent repairs to the levee in 2010 was barred by both the statutes of limitations and repose;

- that the levee had been in use, in substantially the same form, since the 1970's and was therefore not a temporary nuisance, and Plaintiffs' claim for nuisance was consequently barred by the statute of limitations;

- that Plaintiffs' claim for strict liability for diverting the natural flow of water was barred by the statute of repose because Plaintiffs knew of the potential harm and of repairs to the levee as of 2010.

Plaintiffs argue that the court erred as a matter of law in holding: that the statutes of limitations and repose barred Plaintiffs' claims; that Defendants were not negligent or did not breach any duty in the construction, repair or maintenance of the levee; and that the levee was a permanent nuisance. We discuss the nuisance claim first.

---

[5] Defendants' Rule 56.03 statement was supported by the affidavits of Wilton ("Will") Wade, Rance Barnes, Thomas Griggs (whose family has farmed the acres adjacent to the levee for approximately 40 years), and the deposition of Kevin Vakili (managing member of KMI). Plaintiffs' response and Rule 56.03 statement was supported by the deposition of Will Wade with exhibits (a map, pictures of the spillway, and text message conversations), excerpts of the depositions of Danny Jowers (former Director of the Obion County Emergency Management Agency), Thomas Griggs, Rance Barnes, Kevin Vakili, Russell Neil (KMI manager), and Robert Albright (owner of A & A Backhoe, who performed work on the levee in 2010 after a prior flood event), as well as the affidavits of Dr. Charles Morris (forensic hydrologic engineer), and James Smith (attorney for Plaintiffs).

## A. Nuisance

The determinative issue relative to the question of nuisance is whether the levee constituted a temporary or permanent nuisance; this, in turn, causes us to consider whether the work done on the levee after the 2010 flood constituted repairs, as contended by Defendants, or was a rebuild of the levee, as argued by Plaintiffs. If the levee is determined to be a permanent nuisance, then Defendants are entitled to summary judgment because the cause of action would have accrued prior to the flood in 2016.[6] If the levee is determined to be a temporary nuisance, the Defendants are not entitled to summary judgment because the statute of limitations would begin to run when Plaintiffs were injured during the 2016 incident.

In our resolution of this issue, we are guided by this Court's decision in *Leggett v. Dorris,* in which a plaintiff landowner filed suit alleging a "continuous nuisance" caused by the defendant neighboring landowners, whose grading of their property altered the natural drainage pattern and caused damage to plaintiff's home. *Leggett,* 2009 WL 302290, at *1. The defendants moved for summary judgment, asserting that the suit was barred by the statute of limitations; the trial court agreed, finding that more than three years had occurred between the time the plaintiff observed the altered flow of water and his filing suit. *Id.* at *1-2. On appeal, we reversed the judgment, holding that a genuine issue of material fact remained in dispute as to the proper characterization of the alleged nuisance:

> In Tennessee, a nuisance is characterized as either temporary or permanent. *Clabo v. Great American Resorts, Inc.,* 121 S.W.3d 668, 671 (Tenn. Ct. App. 2003). The distinction is critical because the two categories require different measures of damages and different standards for determining when the statute of limitations begins to run.

---

[6] "A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). No dispute is raised as to the first or third component in this case; it is the second component—when the cause of action accrued—that is at issue in this case.

A cause of action accrues "not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Redwing,* 363 S.W.3d at 459 (quoting *Carvell v. Bottoms,* 900 S.W.2d 23, 29 (Tenn. 1995)). When a cause of action accrues is "frequently a question of fact to be determined by the jury or trier of fact, as where the evidence is conflicting or subject to different inferences." *Nat'l Mortgage Co. v. Washington*, 744 S.W.2d 574, 580 (Tenn. Ct. App. 1987); *see also Molin v. Perryman Const. Co.*, No. 01-A-019705-CV-00232, 1998 WL 83737, at *6 (Tenn. Ct. App. Feb. 27, 1998) (citing *Prescott v. Adams,* 627 S.W.2d 134, 139 (Tenn. Ct. App. 1981)); *Johnson v. Craycraft*, 914 S.W.2d 506, 511 (Tenn. Ct. App. 1995).

6

A temporary nuisance is "one that can be corrected by the expenditure of labor and money." *Pryor v. Willoughby,* 36 S.W.3d 829, 831 (Tenn. Ct. App. 2000) (citing *Caldwell v. Knox Concrete Prods., Inc.,* 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964)). A permanent nuisance, on the other hand, is one that is "presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it...." *Caldwell [v. Knox Concrete Products, Inc.],* 391 S.W.2d [5] at 11 [(Tenn. Ct. App. 1964)]. The issue of whether a nuisance is temporary or permanent is a question of fact. *Id.*

This Court, however, has recognized that these definitions are not entirely satisfactory. *Clabo,* 121 S.W.3d at 671. After all, with enough money and labor, nearly anything is possible. Likewise, "a permanent improvement to property may, in conjunction with the forces of nature, cause harm only periodically." *Id.* (quoting *Kearney v. Barrett,* No. 01-A-01-9407-CH00356, 1995 WL 1690, at *2 (Tenn. Ct. App. Jan. 4, 1995)). Accordingly, in *Clabo,* this Court looked to older Tennessee cases to find more precise definitions. *Clabo,* 121 S.W.3d at 671. A nuisance is temporary if "the damages resulting from the nuisance are due to the fact that the defendant is 'negligently operating its property so as to unnecessarily create the damage' and it is within the defendant's power to operate in a non-negligent manner." *Id.* (quoting *Robertson v. Cincin[n]at[]i, New Orleans & Texas Pacific Ry. Co.,* 339 S.W.2d 6, 8 (Tenn. 1960)). On the other hand, a nuisance is permanent if "the operation is done with due care considering the use thereof, and it is not contemplated that any change in operation will be made...." *Clabo,* 121 S.W.3d at 672 (quoting *Butcher v. Jefferson City Cabinet Co.,* 437 S.W.2d 256, 259 (Tenn. Ct. App. 1968)).

A proper classification of the nuisance, either temporary or permanent, must be made in order to analyze a statute of limitations defense. A nuisance claim, because it is an action for an injury to personal or real property, is governed by a three year statute of limitations. Tenn. Code Ann. § 28-3-105. When the nuisance is temporary, however, "the very continuation of the nuisance is a new offense entitling complainants' to recover damages accruing within the statutory period next preceding, although more than the statutory period has elapsed since the creation of the nuisance." *Kind v. Johnson City,* 478 S.W.2d 63, 66 (Tenn. Ct. App.1970) (citing *Caldwell,* 319 S.W.2d at 11)); *see also, Anderson v. Am. Limestone Co.,* 168 S.W.3d 757, 761 (Tenn. Ct. App. 2004). When the nuisance is permanent, "the statute of limitations commences to run from the time of the creation of the nuisance." *Anderson,* 168 S.W.3d at 761 (citing *Robertson,* 339 S.W.2d at 9).

7

\*\*\*

> The characterization of a nuisance is a question of fact. In this case, the fact is material because it "must be decided in order to resolve the substantive claim or defense at which the motion [for summary judgment] is directed." *Byrd,* 847 S.W.2d at 211. Therefore, the Appellees would need to conclusively establish that the alleged nuisance is permanent.

*Id.* at \*2–4.

In their brief on appeal, Defendants do not cite to the evidence which they contend supports their argument that the levee constitutes a permanent nuisance. *See* Tenn. R. App. Proc. 27(a)(7)(A); Court of Appeals Rule 6(a)(4) and (b). Notwithstanding, we have determined that the following facts in Defendant's Rule 56 statement are pertinent to this issue and are sufficient to negate Plaintiff's insistence that the levee constituted a temporary nuisance, thereby shifting the burden to Plaintiffs to establish that a dispute of material fact exists:

> 4. The levee in this case has existed since the 1970's. (Affidavits of Will Wade and Thomas Griggs)

> \* \* \*

> 12. The levee is a permanent fixture on the land. (Affidavits of Will Wade and Thomas Griggs)

In meeting their burden, Plaintiffs disputed the above facts, with citations as required by Rule 56.03:

> **[4.] Response:  Disputed.** The levee at issue in this suit was created in 2010 and modified in 2011. Mr. Wade testified he and his mother hired people to reconstruct, modify and/or rebuild of the levee in 2010. (Exhibit 1, Wade Depo., p. 129). Mr. Wade testified the work was a "major process." (Exhibit 1, Wade Depo., p. 128). Robert Albright testified his company was hired to do the reconstruction, modification and/or rebuilding of the levee in 2010, and he personally did the work. (Exhibit 12, Albright Depo., p. 20). Mr. Albright testified his company replaced as much as 1200 feet of the levee over several weeks period of time. (Exhibit 12, Albright Depo., pp. 24-25). Thomas Griggs testified the Wade Family or Wade Acres coordinated the helped perform [sic] the work on the levee in 2010. (Exhibit 4, Griggs Depo., p. 16). Wade Acres, LLC, Will Wade and Rance Barnes state that it is undisputed that "Wade Acres, LLC has leased the subject property to the Griggs family since the 1970s." (Defendants' Rule

56 Statement of Undisputed Facts, ¶ 33). Mr. Albright testified that he went to the Wade office to get paid. That is the office where Mr. Wade and Mr. Barnes would normally be working. (Exhibit 12, Albright Depo., p. 31). Mr. Albright, however, does not remember whether the check paying him for his work was "written by a trust, by a limited liability corporation, by a partnership, by a Wade family member . . ." (Exhibit 12, Albright Depo., p. 56). Will Wade testified that in early May, 2011 it was flooding and Mayor Virginia Davidson asked him to "dip out" a portion of the levee. (Exhibit 1, Wade Depo., p. 43-44). Mr. Wade gave it some thought and agreed to "dip out" that portion of the levee. (Exhibit 1, Wade Depo., p. 43-45). Mr. Wade testified he contacted Rance Barns who provided a track hoe and they dipped out the area. (Exhibit 1, Wade Depo., pp. 45-46). Rance Barnes testified that Barnes Farms, a general partnership between Rance Barnes and Patti Barnes, made modifications to the levee in 2011. (Exhibit 5, Barnes Depo., pp. 22, 44). Wade Acres, LLC owned the levee in 2016 at all times relevant to Plaintiffs' complaint. (Exhibit 1, Wade Depo., p. 106).

**[12.] Response: Disputed**. The levee can be removed or modified with the expenditure of money and labor. (Affidavit of Dr. Charles D. Morris). Moreover, substantial portions of the levee have been "washed away" over the years. Specifically, there were portions of the levee that were "busted" out in 1990 and subsequently replaced. (Exhibit 4, Griggs Depo., p. 11). Again, in 1997, portions of the levee were breached and subsequently replaced. (Exhibit 4, Griggs Depo., p. 14). Again, in 2010, as much as 1200 feet of the levee was washed away and the levee was re-built. (Exhibit 12, Albright Depo., pp. 24-25).

In a subsequent statement of undisputed facts, Plaintiffs set forth the following statements of fact, to which Defendants did not respond:

47. In addition, Dr. Morris opined that the levee could have been altered, and could be altered, at the expense of money and labor to protect the K1 plant from a similar event to that in 2016 while still providing some flood protection to the farmland within a reasonable degree of engineering certainty. (Exhibit 11, Affidavit of Charles D. Morris).

RESPONSE:

a. Such a plan could include a tiered levee system designed to be overtopped during potential flood events and/or install flood gates. (Exhibit 11, Affidavit of Charles D. Morris.).

RESPONSE:

Reviewing the materials before us in the light most favorable to the Plaintiffs as the non-moving party, we conclude that Plaintiffs have set forth proof demonstrating that there is a genuine issue of material fact as to whether the levee was a temporary or permanent nuisance. In this regard, the question of whether the work on the levee constituted mere repairs or a pervasive rebuild is material to the issue of whether the nuisance is characterized as temporary or permanent. Accordingly, we reverse the grant of summary judgment on the ground that the nuisance claim was barred by the statute of limitations.

## B. Negligence

The court granted summary judgment on the Plaintiffs' negligence claims on the basis that they were "barred by both the statute of limitations or the statute of repose" as well as on the Plaintiffs' inability to prove a necessary element of their claim, namely, that Defendants owed the Plaintiffs a duty of care. We first address the court's analysis of the applicability of the statute of repose.

### 1. Statute of Repose

The statute of repose, found at Tennessee Code Annotated section 28-3-202, reads:

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, or construction of such an improvement within four (4) years after substantial completion of such an improvement.

In their motion, Defendants asserted that the action was barred by the statute of repose because the levee had existed for decades before the formation of Wade Acres, LLC, and because none of the defendants built the levee.[7] The trial court agreed, holding that

---

[7] It is not disputed that Rance Barnes and Will Wade were young men when the levee was first constructed; they are defendants in the case by virtue of their positions as treasurer and president, respectively, of Wade Acres. Their positions with Wade Acres do not *ipso facto* impose personal liability on them. "As a general rule, members, owners, employees or other agents of a Tennessee limited liability company have no personal liability for the debts or obligations of the company." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012) (citing Tenn. Code Ann. §§ 48-217-101(a)(1); 48-249-114(a)(1)(B)). The parties do not raise the question of any potential personal liability of these two individuals on appeal.

Plaintiffs' claim for negligent construction was barred by the statute of repose:

> Count 2 of the Complaint alleges liability based upon construction of the levee without the use of an engineering study. Plaintiffs argue that the repairs to the levee by Albright, in 2010, should have been completed with the aid of an engineering study; however, the proof submitted fails to establish any such requirement. Plaintiffs were on notice after the flood event in 2010 about potential future flooding events of its property. Therefore, these claims are barred by both the 3 year statute of limitations or the 4 year Statute of Repose.

Plaintiffs contend that Tennessee Code Annotated section 28-3-205(a) applies in this case and prevents Defendants, as owners of the property, from relying on the statute of repose:

> The limitation provided by this part shall not be asserted as a defense by any person in actual possession or the control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

Plaintiffs argue that "[t]he undisputed facts establish that at the time of the flood of 2016 . . . , Defendants Wade Acres, LLC, Will Wade and Rance Barnes were either the owners or were in control of the deficient levee which caused substantial damage to Plaintiffs' property, both real and personal."

In *Belcher v. State,* a proceeding initiated before the Tennessee Claims Commission to recover for injuries suffered in an automobile accident in 1990, the plaintiffs alleged was caused by the negligent design, approval, and maintenance of a roadway, the commission determined that a dangerous condition existed where the injury occurred, that the State was negligent in the design and maintenance of the roadway, but that its negligence was not the proximate cause of the plaintiffs' injuries. On appeal, this court affirmed the claims commission's ruling. In the course of our opinion, we addressed the State's assertion that, because the highway was first constructed in 1954 and improved in 1980 the statute of repose barred the action. No. E2003-00642-COA-R3-CV, 2003 WL 22794479, at *4-5 (Tenn. Ct. App. Nov. 25, 2003). This Court rejected the defense, holding:

> The intent of the legislature in enacting Tenn. Code Ann. § 28-3-202 was to "insulate contractors, architects, engineers, and others from liability for defective construction or design of improvements to realty" when the injury or death occurs more than four years after the improvement is substantially completed. *Chrisman v. Hill Home Dev., Inc.,* 978 S.W.2d 535, 540

11

(Tenn.1998) (citing *Watts v. Putnam County,* 525 S.W.2d 488, 492 (Tenn.1975)).

It is clear that the four-year statute of repose was not intended to be applicable to the owner of the subject property, but rather to the *designer* of the property. As the State has "actual possession or the control" of the highway at issue, *see* Tenn. Code Ann. § 28-3-205(a), it cannot assert the statute of repose as a defense to the [plaintiffs]' claim.

*Id.* at *5.

Similarly, in this case, there is no dispute that Wade Acres owned the levee in 2016 when the Plaintiffs suffered their loss. As owner of the levee at the time it allegedly caused Plaintiffs' loss, Wade Acres cannot assert the statute of repose as a defense. *See Manis v. Gibson*, No. E2005-00007-COA-R3-CV, 2006 WL 521466, at *3 (Tenn. Ct. App. Mar. 3, 2006) (holding that because "defendants owned the improvements at the time of the alleged deficiency, . . . the exception in the statute [at 28-3-205(a)] prevents defendants from relying on the statute of repose"). Accordingly, the trial court erred in granting summary judgment on this ground with respect to count 2.

The trial court also granted summary judgment on Plaintiffs' claim of absolute or strict liability as being barred by the statute of repose. Because we have determined that Defendants cannot assert the statute of repose as a defense, we reverse the grant of summary judgment on this claim as well.

### 2. Statute of Limitations

We next address whether the record establishes that the Plaintiffs' cause of action for negligence accrued more than three years before suit was filed, such that the statute of limitations would bar the action.

The necessary elements of a negligence claim are: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (citing *Giggers v. Memphis Hous. Authority*, 277 S.W.3d 359, 364 (Tenn. 2009)). The third element, specifically, whether the date of the injury or loss is more than three years prior to the commencement of the suit is pertinent to the defense of the statute of limitations. "The time of the accrual of the cause of action, as affecting limitations, is frequently a question of fact to be determined by the jury or trier of fact, as where the evidence is conflicting or subject to different inferences." *Molin v. Perryman Const. Co.,* No. 01-A-019705-CV-00232, 1998 WL 83737, at *6 (Tenn. Ct. App. Feb.27, 1998) (citing *Prescott v. Adams*, 627 S.W.2d 134, 139 (Tenn. Ct. App. 1981)).

12

There is no dispute that the Plaintiffs suffered a loss in 2016 when the KMI facility flooded; suit was filed less than a year later. In their brief on appeal, Defendants again argue that the levee has been in existence in substantially the same form since the 1970s and contend that the Plaintiffs' earlier losses and damage from flooding, which were caused by the same levee, put them on notice of the likelihood of a similar event; thus, the cause of action accrued more than three years before the 2016 flood event. Defendants also assert that none of the Defendants actually constructed the levee. In response, Plaintiffs contend that the levee was essentially reconstructed after the 2010 flood event and that they did not suffer a loss or injury as a result of the reconstructed levee until 2016. The evidence discussed previously in Section III A applies to this issue as well, as it shows that Will Wade directed that the 2010 work on the levee take place and that it was a "major process" done without the use of engineers. Viewed in the light most favorable to Plaintiffs, the proof establishes that material facts are in dispute as to who constructed the levee, whether the 2010 work was a repair or constituted new construction, as well as when the Plaintiffs were aware, or should have been aware, that the allegedly negligent work on the levee caused their loss. Accordingly, we reverse the grant of summary judgment on the basis of the statute of limitations on the Plaintiff's negligence claim.

### 3. Duty of Care

Generally, Tennessee case law imposes a duty on landowner to not interfere with the drainage of water such that it injures an adjoining landowner. *Talley v. Baker,* 3 Tenn. App. 321, 1926 WL 2057, at *2 (Tenn. Ct. App. 1926). In *Talley*, this Court observed:

> A lower landowner . . . is charged with the duty of not placing in a natural drainage, or in a ditch which has been maintained along the course, over and in the place of a natural drainage, any artificial obstruction, and if he build a structure (such as a bridge) across the drainway, he is charged with the positive and continued duty of providing for the natural passage through such obstruction of the water which may be reasonably anticipated to drain through that channel.

*Talley,* 1926 WL 2057, at *2.[8] Count two of the complaint alleged, *inter alia*, that the Defendants had a duty to properly construct a levee "to assure that the construction of the

---

[8] Although the trial court in this case did not make a specific finding in this regard, Wade Acres' Rule 56.03 statement and Plaintiff's response thereto stated:

STATEMENT: Plaintiff KMI, complains that the levee adjacent to its property "…interrupts the natural flow" of water after heavy rains occurring March 10-13, 2016 and caused flooding throughout its facility.
RESPONSE: Agreed

13

levee would not cause damage to any other property owner, to not interfere with the natural drainage of surface water," which they "breached by construction of a levee without any proper engineering, hydrological studies, hydrolysis studies, or any other type of considered evaluation of how the construction would affect the flow of water." We will refer to this allegation as the "negligent construction" allegation. Plaintiffs further alleged that the "Defendants breached this duty by refusing and/or failing to breach the negligently constructed levee when asked to do so." We will refer to this as the "negligent operation" allegation. The complaint alleged that the Defendants' "breach of the duty" was the cause in fact and proximate cause of all the damage suffered by the Plaintiffs when the plant was flooded "due to the levee not allowing the natural flow of surface water."

With respect to the negligent construction allegation, Defendants argue that, inasmuch as they did not construct the levee, they did not owe a duty to Plaintiffs. We have previously held that the question of whether the repairs done following the 2010 event constituted repairs or construction presents a question of fact; that holding applies equally to this issue and precludes summary judgment on this aspect of Plaintiff's negligence claim.

With respect to the negligent operation allegation, Defendants argue in their brief that:

> . . . Wade Acres did not create a risk of harm to KMI. The extensive rainfall and overflowing of the Obion River was the cause of the harm to KMI. Wade Acres owed no duty of care to KMI.
>
> Further, none of the affirmative duty provided §§ 38-44 of the Third Restatement of Torts applies to Wade Acres, LLC. There are no statutes requiring Wade Acres, LLC to break open their levee and flood their land to prevent KMI's factory from flooding. Wade Acres had no duty based on prior conduct. Wade Acres and KMI have no special relationship imposing a duty. Wade Acres did not undertake to render services to KMI. Therefore, owed no duty to KMI and thus could not be found negligent in refusing to breach their levy and flood their land to save the property of KMI.

Defendants have not cited to any evidence to support their contention that they did not owe KMI a duty in relation to the operation of the levee. Upon our review of the record, we have determined that the following statements and responses from Defendants' Rule 56.03 statement are pertinent:

14

42.  No one at KMI had any plan or concept how to accomplish a "breach" of the levee. (pg. 20, Depo of K. Vakili II, p. 37)[9]

**Response: Agreed in part and disputed in part.** Plaintiffs agree that at the time of the flood event in 2016, Plaintiffs did not have a plan or concept; however, now Plaintiffs have offered expert opinion regarding suggested designs to the existing levee. (Exhibit 11, Affidavit of Dr. Charles Morris).

43. Plaintiffs' managing agent, Kevin Vakili, had no facts to establish anyone from Wade Acres was presented with a plan to cut a hole in the subject levee.  (Depo of K. Vakili II, p. 21)

**Response: Agreed in part and Disputed in part.** Mr. Vakili testified that he was told before the 2011 flood event that the Defendants were breaching the levee to allow the water to pass around the levee so the KMI plant would not flood again. (Exhibit 7, Vakili Depo, Vol. 1., pp. 50-54).

A subsequent Rule 56.03 statement filed by Defendants asserted:

16.   Mr. Jowers never made any requests to Will Wade or Rance Barnes to cut a hole in or breach the railroad levee. (Depo of D. Jowers, pg. 127)[10]

Defendants' statements were sufficient to shift the burden to Plaintiffs to produce evidence showing a genuine issue of fact as to both the nature of the duty owed and breach of the duty.  Plaintiffs responded:

**RESPONSE: Disputed.** Mr. Jowers testified he had a conversation with Mr. Wade about putting a hole in the levee and sent Mr. Wade a text message that stated: "If the city agrees to repair that levee can we put a hole in it . . . . The RR [Railroad] Farm is still dry." (Depo. of Jowers, p. 45; Depo. of Jowers, Exhibit 6). Further, Mr. Jowers testified that Mr. Wade said he didn't know who was going to do the breach because all of "our" equipment was in Gleason. (Depo. of Jowers, p. 46).

---

[9] In his testimony, Mr. Vakili agreed that he did not have "the knowledge, experience or a plan to do something particular that would be called a breach of the levee" and that he did not know if "Mr. Barnes, Mr. Wade, or anyone at [Wade Acres,] LLC was presented with any kind of plan to cut a hole in the levee to alleviate [his] flooding problems."

[10] Mr. Jowers testified that that he "repeatedly told Mr. Neil and Mr. Vakili that he d[id no]t have the authority to damage a citizen's private property to try to benefit a different citizen or business."

15

The material supplied by Plaintiffs in support of their response satisfied their burden to show a genuine issue of fact as to whether Mr. Wade was aware that the levee on Wade Acres LLC's land was preventing the waters from draining naturally and whether the failure to provide for a passage of water through the levee constituted a breach of the duty owed to Plaintiffs. *See Talley,* 1926 WL 2057, at *2. Accordingly, summary judgment should not have been granted on the Plaintiff's negligence claim.

### 4. Willful and Wanton Misconduct

Relative to this cause of action the complaint alleged:

> 57. Plaintiffs claim that Defendants had a duty to properly construct a levee, to assure that the construction of the levee would not cause damage to any other property owner, to not interfere with the natural drainage of surface water.
>
> ***
>
> 59. Defendants willfully and wantonly breached this duty by refusal to breach the levee they owned and/or maintained with knowledge that serious injury to Plaintiffs would probably result and/or with a disregard of the possible results of said refusal to breach the levee.
>
> 60. The willful and wanton breach of the duty by Defendants is the cause in fact and proximate cause of all of the damage suffered by Plaintiffs when the KMI manufacturing plant was flooded due to the levee not allowing the natural flow of surface water.

In their motion for summary judgment defendants stated "there is no justiciable claim for 'willful and wanton misconduct/civil conspiracy.'" In the discussion of this ground in the memorandum accompanying the motion, Defendants do not cite to any evidence or admitted assertion(s) in the Rule 56.03 statement; the discussion is simply three paragraphs of argument.

Whether or not a defendant's conduct rises to the level of willful, wanton or gross negligence turns upon the facts of each case. *Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756, 758 (Tenn. 1944). "Willful negligence involves deliberation and malice," *Schwartz v. Johnson,* 280 S.W. 32, 33-34 (Tenn. 1926). Wanton negligence is defined as "[a] heedless and reckless disregard for another's rights, with the consciousness that the act or omission may result in injury to another," *Craig v. Stagner,* 19 S.W.2d 234, 236 (Tenn. 1929). "Thus, both wil[l]fulness and wantonness require a consideration of the state-of-mind of the party who is charged therewith[, and i]ssues involving the state of a person's mind are seldom capable of resolution on a motion for summary judgment."

16

*Stofer v. Ramsey*, 558 F. Supp. 1, 3 (E.D. Tenn. 1982) (applying Tennessee law and citing *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, (1979) (malice); *Smith v. Hudson*, 600 F.2d 60, 66 (6th Cir. 1979) (motive or intent); *Hill v. Cantor*, 38 F.R.D. 503, 504 (E.D. Tenn. 1965) (malice)).

The trial court granted summary judgment on this claim, holding:

> Count 4 liability is based upon willful and wanton misconduct of Defendants, under two different theories. First, that the construction of the levee was negligent without an engineering study. This theory fails because none of the Defendants constructed the levee and the repairs made in 2010 were simply that, repairs to the existing levee, not new construction. Second, that the Refusal to Breach the levee in 2016, during the flood event, was an intentional act against the Plaintiffs. However, there is no competent proof that a specific demand was ever made to request such a bre[a]ch. Further, Plaintiff has failed to prove there [is] any specific duty to rescue one from peril at the cost of another. As such, this theory must fail.

As previously held, the question of whether the repairs done after the 2010 flood event constituted repairs or new construction is not appropriate for summary judgment. Further, we have not been cited to any evidence supporting Defendants' argument that breaching the levee would have imperiled them, or the nature and extent of any such peril; in the absence of such, the burden to introduce evidence establishing an issue of material fact for trial did not shift to Plaintiffs.

Accordingly, we reverse the award of summary judgment on the counts asserting claims for negligence and willful and wanton misconduct.

## C. Injunction

Plaintiffs also assert that the court erred in failing to grant them injunctive relief. Inasmuch as we have reversed the grant of summary judgment and remanded the case for trial, Plaintiffs are free to pursue temporary or permanent injunctive relief, as they deem appropriate.

## D. Civil Conspiracy

The trial court granted summary judgment to Defendants on the Plaintiffs' civil conspiracy claim; Plaintiffs do not appeal that ruling. In this regard, we note that Plaintiffs did not dispute Defendants' statement of material fact that "[t]here was no collusion or conspiracy between or among Mr. Jowers, Mr. Barnes, and Mr. Wade to allow or do damage to Plaintiffs."

**IV. CONCLUSION**

In light of the foregoing analysis, we reverse the trial court's grant of summary judgment on the negligence and nuisance claims. We affirm the grant of summary judgment on the civil conspiracy claim. The case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE



8
243.18 ACc

8.01
14 ACc

Wade Acres, LLC

26.01
2.4 AC
Wade

26.02
15.49 AC

X X X

City of Kenton
26
48.26 ACc

Mary
Louise
Davis
25
72.95 AC

Summit
Properties

34
11.24 ACc

34.01
13.37 AC

470 ft

TEXT_GENERAL

TEXT_PARCEL

LEADERLINES

PARCELS

ORTHOPHOTO (Image)

ORTHOPHOTO (Image)

ORTHOPHOTO (Imago)

**OBION COUNTY, TENNESSEE**

DISCLAIMER: THIS MAP IS FOR PROPERTY TAX ASSESSMENT PURPOSES ONLY. IT WAS CONSTRUCTED FROM PROPERTY INFORMATION RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, AND IS NOT CONCLUSIVE AS TO LOCATION OF PROPERTY OR LEGAL OWNERSHIP.





DEPOSITION
EXHIBIT
4
8/23

19