Howard ANTHONY and Wanda Anthony, Plaintiffs-Appellants Cross-Appellees,

v.

CONSTRUCTION PRODUCTS, INC. and Reliance Insurance Company, Defend-ants-Appellees Cross-Appellants.

Court of Appeals of Tennessee, Western Section at Jackson.

May 17, 1984.

Application for Permission to Appeal Denied Aug. 27, 1984.

J. Houston Gordon, Covington, for plaintiffs-appellants.

Lawrence C. Maxwell, Nashville, Russell Rice, Jr., Jackson, for defendants-appellees.

CRAWFORD, Judge.

This appeal involves a judgment based on a jury verdict. Plaintiffs, Howard Anthony and Wanda Anthony (hereinafter Anthony), filed suit against Construction Products, Inc., (hereinafter CPI) and Reliance Insurance Company (hereinafter Reliance). The trial court, at the conclusion of the proof, directed a verdict for Reliance and then subsequently entered judgment on the jury verdict for Anthony against CPI in the amount of $75,000 compensatory damages and $75,000 punitive damages. On post trial motions the trial court suggested a remittitur of $50,000 on the punitive damages, which was accepted under protest by Anthony, and both parties have appealed.

CPI presents four issues for review by this court, and Anthony presents two issues which we will consider in the order presented.

Anthony's complaint, filed May 13, 1982, alleges in substance that they owned a convenience-type store known as the Minit Mart at 1100 West Market Street, Bolivar, Tennessee, and sold gasoline, food items, drinks, beer and cigarettes; on or about March 12, 1982, the State of Tennessee, Department of Transportation, entered into a contract with defendants CPI for the improvement of 1.314 miles of Route 15, Hardeman County, to be completed in 175 working days, and plaintiffs incorporated the terms of the contract by reference into the complaint; and as required by law, CPI obtained a surety bond from Reliance, a copy of which is incorporated by reference. The street involved in the contract runs directly and immediately in front of the Minit Mart Store, and CPI commenced performance shortly after the contract was signed in March, 1981, with a completion date tentatively set for November 1, 1981. In the complaint plaintiff further alleges that: CPI was generally negligent in completing the contract, failing to timely and reasonably perform, keeping the street in an unreasonable state of disrepair and allowing conditions to exist for more than a year; CPI maintained a nuisance by means of some unprofessional disorganization and

sloppy performance of the construction work, both of which unduly interfered with Anthony's business; also the alleged negligent acts and omissions of CPI constituted either gross negligence or conscious and wanton disregard for the rights of Anthony; the Anthony's business sustained damages as a result of the nuisance created by CPI and the negligence and gross negligence of CPI; and in addition Reliance, the insurance company, is liable to Anthony because the performance bond executed for the project created a third-party beneficiary contract for the benefit of Anthony.

In its answer, Reliance admits the construction contract and the performance bond, but denies the material allegations of negligence, gross negligence and nuisance made against the defendants. CPI in its answer admits the contract and performance bond, but denies the material allegations of the complaint concerning negligence, gross negligence and nuisance. CPI affirmatively asserts that it was not furnished adequate information concerning work being performed at the construction site by the telephone company; that a lack of cooperation with the telephone company existed which resulted in some disruption of the highway improvement project; and that it performed the work under the instruction and control of the State of Tennessee.

We will now consider the issues presented by CPI.

I. Whether the trial court erred in failing to grant CPI's motion for a directed verdict at the close of the proof.

▉ In considering a motion by defendant for a directed verdict, trial and appellate judges are required to look to all the evidence, to take as true the evidence in favor of plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, and to allow all reasonable inferences from it in his favor. If any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence exists, the motion must be denied. *Poe v. Atlantic Coast Line Railroad Co.*, 205 Tenn. 276, 326 S.W.2d 461 (1959), *Monday v. Millsaps*, 37 Tenn.App. 371, 264 S.W.2d 6 (1954).

▉ A nuisance is anything which annoys or disturbs free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Caldwell v. Knox Concrete Products, Inc.*, 54 Tenn. App. 393, 402, 391 S.W.2d 5, 9 (1964).

▉ A nuisance may exist either with or without negligence. As a general rule, negligence is not involved in nuisance actions or proceedings and is not essential to the cause of action. If a particular use of property causes a nuisance this fact is sufficient to entitle a person injured thereby to relief. If a nuisance exists, the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of does not relieve defendant of liability. *Weakley County v. Carney*, 14 Tenn.App. 688, 693 (1932).

▉ A temporary nuisance is one that can be corrected by expenditure of labor or money. *Caldwell v. Knox Concrete Products, Inc., supra.*

CPI contends that the activities of CPI did not constitute a nuisance for which Anthony can recover, no competent proof of CPI's negligence exists and Anthony failed to prove damages.

▉ CPI asserts that as long as a contractor under a public contract performs in a proper manner and acts in accordance with the public authority's order, the contractor shares the immunity of the public authority from liability for any injury that may result and cites *Wood v. Foster & Creighton Co., et al*, 191 Tenn. 478, 235 S.W.2d 1 (1950). We have no quarrel with CPI's statement as to the holding of *Wood v. Foster & Creighton Co., et al, supra,* but CPI has overlooked the major premise on which the rule in *Foster* is based, i.e. that if the contractor followed the direction of its superior, the State of Tennessee, and in so performing the construction *was not*

*negligent,* then the contractor would not be liable to third parties. The record in the case before us indicates activities performed by CPI's agents and employees that clearly could be classified as negligent within the commonly accepted definition of negligence. It is the theory of Anthony, and proof was introduced in support thereof, that CPI dug a trench in front of Anthony's business establishment on May 15, 1981, that the ditch never properly drained, that gravel used to cover part of the ditch obstructed the drainage itself, that the gravel was not suitable to provide proper ingress and egress to the Anthony's business and that this condition continued for several months. Lay witnesses testified generally concerning the difficulty in gaining access to the store, and that customers quit shopping at the Minit Mart because they were afraid of getting their car stuck due to the condition of the temporary driveways constructed and maintained by CPI. Testimony concerning the incorrect method used by CPI in its construction of the gravel driveway centered on the fact that the gravel was not compacted as required. Certainly material evidence was introduced concerning the negligence of CPI's employees in the performance of the contract. Clearly from the proof in the record the finder of fact could also determine that Anthony's free use and enjoyment of the property was hindered.

However, CPI also relies upon T.C.A. § 12-4-503 (1980), which CPI contends absolutely discharges it from any liability to Anthony for the complained of actions. The statute provides:

*Discharge of contractor from liability*—Upon acceptance by the state of a state contractor's work, provided that such state contractor's work is done in accordance with the plans and specifications, such state contractor is discharged from all liability to any party by reason of its lack of ordinary care in the performance of, or failure to perform, such work on such state construction project.

CPI's reliance on this statute is misplaced. This statute does not apply to the situation presented by the case at bar. The statute was intended to and does cover liability which may arise subsequently to the acceptance of the contractor's work by the state and pertains to the workmanship performed by the contractor. The statute could not operate to release and discharge a tortfeasor for damages caused to another merely by the state's acceptance of the work. This statute was not intended nor does it apply to relieve the contractor of his obligation to respond in damages to one injured or damaged by the contractor's actions at the time of performing the work required by the contract.

Lastly, CPI contends that the trial court should have directed a verdict, because the Anthonys failed to prove their damages. In *Caldwell v. Knox Concrete Products, Inc., supra,* the court provided the correct measure of damages for a temporary nuisance:

"For temporary or recurring nuisance, damages may be recovered from time to time for impairment of the use and enjoyment of the property; and the measure of such damages will be the injury to the value of the use and enjoyment, which may be measured to a large extent, by the rental value of the property, and to what extent that rental value is diminished." *City of Murfreesboro v. Haynes,* 18 Tenn.App. 653, 82 S.W.2d 236 and cases cited therein.

*Id.* at 407, 408, 391 S.W.2d at 12.

Material evidence was produced by Anthony concerning the loss of business occasioned by the condition of the access to their property. The testimony demonstrated that plaintiffs were entitled to some amount of damages due in part to the lack of customer traffic at the store and the decline in the business profits. Certainly, material evidence was introduced sufficient to create an issue of fact for submission to the jury. We will discuss the damages awarded in more detail hereinafter.

Accordingly, we find the contentions of CPI on the first issue to be without merit.

## II. The trial court erred in submitting the issue of punitive damages to the jury.

■ Punitive damages given in excess of compensatory damages are awarded in cases involving fraud, malice, gross negligence or oppression; or where a wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligations; or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to the consequences. *Inland Container Corp. v. March*, 529 S.W.2d 43 (Tenn.1975).

Although Anthony apparently contends that there was a problem with the general construction work and the manner in which it was conducted, the primary allegations concern the actions of the contractor which prevented customer access to Anthony's particular piece of property. The proof showed that a cut or ditch was made along the right of way in front of the property where normally traffic would enter and leave to do business with the Minit Mart. After the dirt was taken from this cut, gravel was temporarily placed in part of the cut to allow traffic to proceed across the cut and gain access to the store premises. Apparently, an area of the cut that was not filled with gravel allowed water to collect therein. The Anthonys contend that the gravel used was more the consistency of mud, and on one or two occasions, vehicles became stuck or mired in this temporary access area. Also proof was introduced that some vehicles scraped the gravel on occasions. Apparently, the primary complaint of the Anthonys, as indicated from the brief, centered upon the protracted time this cut remained with the imperfect gravel fill as the only ingress and egress. However, no proof appears in the record that the length of time the cut was allowed to remain was a breach of the construction contract. During the period of time that the construction was in progress, the Anthonys testified that they complained to the State of Tennessee supervisor, but they never complained to any officer or supervisor with CPI. They also testified that periodically gravel was added to the gravel driveways over the cut during this temporary maintenance period. They complained, however, that the gravel was of an inferior quality, and as a result it became soggy, and, as noted previously, at least two vehicles got stuck. Apparently it rained a great deal because the Anthony's complained of standing water in the cut and the construction delays. However, construction delays are excuseable in bad weather conditions, and apparently the state had no complaints concerning any delay in the fulfillment of the contract. The state supervisor testified that CPI complied with all his requests for additional work needed to assist occupiers of abutting property.

■ Although the proof introduced was sufficient to create an issue for the jury as to whether CPI exercised reasonable and ordinary care in the performance of the contract and whether or not CPI maintained a nuisance that interfered with the Anthonys enjoyment of their property, we simply cannot find that the proof rises to the degree required to show fraud, malice, gross negligence or oppression. Also the proof is insufficient to show that the acts of CPI were done so recklessly as to imply disregard of its social obligation or to show a conscious indifference to the consequences. Accordingly, we find that the record in this case does not support an award of punitive damages and an instruction in this regard was erroneous. Consequently, that part of the judgment regarding the award of punitive damages is reversed.

## III. Whether the trial court erred in admitting evidence of the before and after value of the Anthony's business.

■ Both of the Anthonys testified over objection that in their opinion the value of their business was $100,000.00 immediately before the cut or ditch was dug May 16, 1981, and the value of the business was $30,000.00 when they sold it in April of

1982. As we previously noted the Anthonys could only have sustained a temporary injury to their business. The difference in market value of property cannot be considered in ascertaining damages for a temporary nuisance; only in cases involving a permanent nuisance or injury can the difference in market value be considered. *City of Murfreesboro v. Haynes,* 18 Tenn. App. 653, 82 S.W.2d 236 (Tenn.App.1935).

■ The measure of damages for a temporary injury to property is the injury to the value of the use and enjoyment of the property which may be measured to a large extent by the rental value of the property and to what extent that rental value is diminished. *Citizens Real Estate & Loan Company, Inc. v. Mountain States Development Corporation,* 633 S.W.2d 763 (Tenn.App.1981).

In the instant case, the use of the land by the Anthonys was for the purpose of conducting a business and making a profit. Logic indicates that to a large extent the value of the use of the land is measured by the income derived therefrom, and in this case, the income derived from the conduct of a convenience store business.

■ It was error for the court to admit the testimony concerning the difference in value of the Anthony's property. A review of the record and the verdict returned by the jury indicates to this court that the evidence more probably than not affected the verdict. Accordingly, the verdict of the jury should not be allowed to stand, the judgment of the court awarding compensatory damages should be reversed, and the case is remanded for retrial on damages only.

IV. Whether the trial court erred in denying CPI's motion for summary judgment.

The parties have not presented the issue of whether this court can consider, on appeal from a final judgment on the merits, the earlier interlocutory order of the trial court denying summary judgment. We will not, therefore, consider that issue, but will confine our review to the propriety of the denial of summary judgment by the trial court.

■ Summary judgment procedure is not a substitute for the trial of disputed factual issues, and it is only when there is no disputed issue of material fact that a summary judgment is proper. *Evco Corp. v. Ross,* 528 S.W.2d 20 (Tenn.1975); *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976).

■ In ruling on motions for summary judgment, both the trial court and this court must consider the matter in the same manner as a motion for directed verdict made at the close of plaintiff's proof, i.e., we must view all affidavits in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in that favor. If, after so doing, a disputed issue of material fact is made out, the motion must be denied. *Stone v. Hinds, supra; Berry v. Whitworth,* 576 S.W.2d 351 (Tenn.App.1978).

The summary judgment motion filed by CPI was supported by various affidavits that established the construction project problems encountered and the various steps taken to protect the Anthony's business. The affidavit of plaintiff, Wanda Anthony, was filed on behalf of Anthony and established the essential facts concerning the ditch created by CPI, the length of time it remained, the failure to properly provide ingress and egress, and the disorganized manner of the construction project in general. The factual disputes are clear on the issues of CPI's negligence, and the creation of a nuisance that affected the Anthony's property. Therefore, summary judgment was properly denied by the trial court in this case in view of these genuine issues of material fact.

Anthony presented two issues for review, one of which is no longer viable in view of our decision concerning the award of punitive damages. We will now consider the remaining issue presented for review by Anthony which is:

Whether the trial court erred in directing a verdict in favor of Reliance Insurance

Company at the close of plaintiffs' proof when that company had posted a performance bond for Construction Products, Inc., which bond was broader than that required by statute.

Anthony contends that the bond in question contains language which enlarged the obligation of the surety and thus became a "common law bond" as opposed to a "statutory bond." The definition of such bonds is provided by Judge Nearn in *Wal-Board Supply Company, Inc. v. Daniels*, 629 S.W.2d 686 (Tenn.App.1981):

> However, it has also been held that the bondsman may, according to the terms of its bond, require less of the claimant than the statute requires of him in making a claim. Therefore, when the terms of the bond contain the minimum requirements of the Code and no more, it is termed a statutory bond. See *Heglar v. MacAdoo Contractors, Inc., supra* [ (1972 Tenn.App.W.S.) 487 S.W. 312]. On the other hand, when the bond, according to its terms, extends greater privilege to the claimant than required by statute it is referred to as a common-law bond. See *Hogan v. Walsh & Wells, Inc.*, (1944) 180 Tenn. 670, 177 S.W.2d 835. The essence of the holdings being that the bondsman is required by statute to afford certain protection under certain statutory rules; but if the bondsman elects by the terms of its bond to extend that protection under less stringent rules, it may do so and is bound by the terms of its bond.

*Id.* at 688.

Anthony says that the following language incorporated into the bond enlarges the obligation of Reliance:

> The Contractor shall not enter upon private property for any purpose without obtaining permission, and he shall be responsible for the preservation of all public and private property, trees, monuments, etc., along and adjacent to the roadway and shall use every precaution necessary to prevent damage or injury thereto. He shall use suitable precautions to prevent damage to any public or private property, and he shall protect carefully, from disturbance or damage, all land monuments and property marks until an authorized agent has witnessed or otherwise referenced their location, and shall not remove them until directed. The Contractor shall not willfully nor maliciously injure or destroy trees or shrubs and he shall not remove or cut them without proper authority.
>
> He shall be responsible for all damage or injury to property of any character, during the prosecution of the work, resulting from any act, omission, neglect, or misconduct in his manner or method of executing said work satisfactorily, or due to his non-execution of said work, or any time due to defective work or materials, and said responsibility shall not be released until the roadway shall have been completed and accepted.
>
> When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect, or misconduct in the execution of the work, or in consequence of the non-execution thereof on the part of the Contractor, he shall restore, at his own expense, such property to a condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding or otherwise restoring, as may be directed, or he shall make good such damage or injury, in an acceptable manner.

We don't disagree that the language is over and above that required by the statute; however, Anthony has overlooked several important points in the assertion that they are entitled to recover under the bond as a third-party beneficiary. The additional provision inserted by the contractor also contained the following:

> In case of the failure on the part of the Contractor to restore such property, or make good such damage or injury, the Engineer, as defined in the Specifications, may upon forty-eight (48) hours written notice, proceed to repair, rebuild, or otherwise restore such property as may be deemed necessary, and the cost

thereof will be deducted from any moneys due or which may become due the Contractor under his contract.

 The additional provisions go further and specifically provide that, "The Contractor and his Surety shall indemnity and save harmless the State, the Department and all of its officers, agents and employees." We have examined this bond and can find no obligation on the part of the surety to anyone other than the state.

Anthony relies upon *National Surety Corporation v. Fischer Steel*, 213 Tenn. 396, 374 S.W.2d 372 (1964), in which the court held that the provisions of the bond gave rights to the claimants beyond those provided by the statute in eliminating the notice provision of the statute as a pre-requisite to filing suit and in establishing a one-year instead of six month time period in which to file suit. The surety company asserted that even with extra provisions the bond was a statutory bond, and plaintiff, Fischer Steel, had no rights independent of the statutes. Justice Holmes, in commenting on this contention, said:

> Certainly, if the bond executed by the surety gave complainant no rights, these contentions would be sound. The *bond* sued on *expressly provides* that furnishers of materials to the contractor are claimants under the bond with the right to maintain an action, thereon, and furnishers of materials having a direct contract with the principle (the contractor) are given a right of action on the bond without the requirement of giving the 90 day notice. The complainant in this case was such a furnisher. The bond provides such claimant may institute his action within one year following the succession of work. This bond does not refer to the statutes, or in any way make the statutory provisions a part of the conditions of the bond. (Emphasis in the original).

374 S.W.2d at 375.

The excerpt from *National Surety Corporation v. Fischer Steel Corporation, supra,* makes it readily apparent that Anthony's reliance on this case is misplaced. In the bond before us, no rights are given to Anthony or any other member of the public, and the only rights given inure to the state. No express provision in the bond describes any rights that inure to Anthony permitting them to maintain an action on the bond.

We have been cited to no authority, nor have we found any authority that would allow Anthony to maintain a direct action against Reliance under the terminology of the bond in question. Accordingly, we find the assertions of Anthony on this issue without merit.

Based on the above, the judgment of the trial court in favor of Reliance Insurance Company is affirmed, the award of punitive damages is reversed, the award of compensatory damages is reversed, and this case is remanded on the issue of compensatory damages only.

The costs of the appeal are adjudged equally between Anthony and CPI.

TOMLIN and HIGHERS, JJ., concur.