IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2019 Session

## NOAH RYAN ET AL. v. LAVERNA SOUCIE

**Appeal from the Chancery Court for Hamilton County**
**No. 17-0447          Pamela A. Fleenor, Chancellor**

_____

### No. E2018-01121-COA-R3-CV

_____

This appeal arises from a dispute concerning the defendant's conduct, which impeded the plaintiffs' use of a state right of way for ingress to and egress from the plaintiffs' commercial property. The trial court entered a judgment in favor of the plaintiffs following its determination that the defendant had created a nuisance and had intentionally interfered with the plaintiffs' business relationships. The defendant has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and RICHARD H. DINKINS, JJ., joined.

Patrick B. Hawley, Chattanooga, Tennessee, for the appellant, Laverna Soucie.

John P. Konvalinka, Chattanooga, Tennessee, for the appellees, Noah Ryan d/b/a Ryan Heat and Air and B.M. Crane d/b/a Crane Development Company.

### OPINION

#### I. Factual and Procedural Background

On June 20, 2017, the plaintiffs, Noah Ryan d/b/a Ryan Heat and Air and B.M. Crane d/b/a Crane Development Company (collectively, "Plaintiffs"), filed a complaint in the Hamilton County Chancery Court ("trial court") against the defendant, Laverna Soucie. In their complaint, Plaintiffs alleged that Mr. Ryan operated his business on commercial property owned by Ms. Crane, who is his mother-in-law.[1] Plaintiffs

_____

[1] In the complaint, Plaintiffs specifically averred that Mr. Ryan "owns and legally operates a business

additionally averred that Ms. Soucie owned a nearby tract of residential property improved with a home. According to Plaintiffs, Ms. Soucie had recently engaged in conduct that impeded Plaintiffs' necessary route of ingress to and egress from their property to a public road known as Parker Lane.

Plaintiffs further alleged that the City of Chattanooga ("the City"), via ordinance, had rezoned a portion of Ms. Crane's real property to reflect a commercial designation in 1995, "for the purpose of allowing commercial business on Crane's Property having a street address of 3222 Parker Lane with 'access to site' (from Parker Lane to Crane's Property) as described on the map attached to, and a part of, such approved and enacted ordinance." Plaintiffs asserted that they had continuously used and exclusively maintained the gravel road providing such access since that time. According to Plaintiffs' allegations in the complaint, the United States Postal Service had instructed Mr. Ryan to place a mailbox for his business at the point where the gravel road abutted Parker Lane.

As averred, at some point following her purchase of nearby property in 2014, Ms. Soucie began impeding Plaintiffs' use of the gravel road by, *inter alia,* planting trees and placing a trailer in front of the gate to Plaintiffs' property, even though Ms. Soucie does not own the real property across which the gravel road exists. Plaintiffs' specific claims included that Ms. Soucie's actions (1) substantially interfered with their use of the gravel road and their own property, (2) constituted a nuisance, and (3) interfered with and harmed Mr. Ryan's business and business relationships. Consequently, Plaintiffs sought damages and injunctive relief. The trial court subsequently granted Plaintiffs a temporary restraining order and set the matter for hearing.

In response, Ms. Soucie filed an answer, contending that title to the property traversed by the gravel road at issue had been conveyed to the State of Tennessee in 1982 and 1984 without any encumbrances reflected in the deeds. Ms. Soucie averred that the City lacked authority to encumber property owned by the State with an easement and asserted that Plaintiffs' use of the gravel road was unnecessary because their property had access to Center Street. Ms. Soucie also raised various affirmative defenses, including failure to state a claim upon which relief could be granted and failure to join an indispensable party.

---

known as Ryan Heat and Air principally on commercially zoned property . . . owned by his mother-in-law, B.M. Crane ("Crane") doing business as Crane Development Company." Although the commercial real property at issue herein is owned by Ms. Crane, because Mr. Ryan operates a business on said property with Ms. Crane's apparent authorization, we will refer to the commercial real property as "Plaintiffs' property" or "their property" herein for ease of reference.

Although the parties subsequently attempted mediation, no settlement was achieved. Ms. Soucie thereafter filed a motion to dismiss, which the trial court denied in an order dated December 7, 2017. On December 14, 2017, the eve of trial, Ms. Soucie filed a motion to recuse, alleging that she had recently learned that the chancellor had previously been in partnership with counsel for Plaintiffs. Ms. Soucie alleged that neither the chancellor nor Plaintiffs' counsel had disclosed their previous business relationship to her. She therefore insisted that the chancellor's impartiality in the matter could be reasonably questioned, such that recusal was proper. In accordance with Tennessee Supreme Court Rule 10B, Ms. Soucie filed a supplement to her motion, asserting that the motion was not presented for an improper purpose.

The trial court entered an order on December 18, 2017, denying the recusal motion. The court found that the motion was untimely because the complaint had been filed on June 20, 2017, and numerous orders had been entered and continuances granted since that time. The court noted that "waiting five months to file a motion to recuse and [] filing that motion one day prior to trial, is not timely." With regard to the affidavit required by Tennessee Supreme Court Rule 10B that must be based on personal knowledge, the court found the instrument filed by Ms. Soucie's counsel to be inadequate. The court determined that "counsel's lack of personal knowledge of the matter set forth in the memorandum is both pronounced and conspicuous as the memorandum attempts to speak to many matters that occurred in the case **prior** to counsel's appearance in the case and are incorrect as pointed out below." The court thus determined that the motion was not supported by a proper affidavit.

With regard to the merits of the recusal motion, the trial court determined that there was no basis for recusal in the case at bar. The chancellor noted that she had "entertained hearings and trials from all of her prior employers . . . and has never announced that she was formerly employed by that firm." The trial court further determined that "there is no appearance of impropriety where opposing counsel was a former partner 23 years ago with the Chancellor." Finally, the court found that there was no bias or prejudice that would prevent a proper adjudication in this matter.

The trial court subsequently conducted a bench trial on March 9, 2018, and May 1, 2018. On May 21, 2018, the trial court entered a final judgment, wherein the court made detailed findings of fact, including that Plaintiffs possessed the right to use the gravel road in question, or the "Driveway" as it was referred to by the court. The court ultimately determined that Ms. Soucie "intentionally, unreasonably and substantially inconvenienced and interfered with Plaintiff[s'] use of the Driveway," thereby constituting a nuisance. The court awarded damages to Plaintiffs in the amount of $14,850, which represented the cost of hauling refuse from Plaintiffs' property after Ms. Soucie rendered the gravel road impassable for the waste disposal truck. Although the

court further found that Ms. Soucie had intentionally interfered with Plaintiffs' business relationships, no additional damages were awarded for this claim. Ms. Soucie timely appealed.

## II. Issues Presented

Ms. Soucie presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred by denying Ms. Soucie's motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6).

2.  Whether the trial court erred by determining that the weight of the evidence preponderated in favor of the award of monetary damages to Plaintiffs.

3.  Whether the trial court erred by holding Ms. Soucie liable for nuisance and intentional interference with business relationships.

4.  Whether the trial court erred by denying Ms. Soucie's motion for directed verdict.

5.  Whether the trial court erred by denying Ms. Soucie's motion to recuse.

In addition to rephrasing the issues raised by Ms. Soucie, Plaintiffs raise the following additional issue, which we have similarly restated as follows:

6.  Whether this Court should consider Ms. Soucie's contentions regarding her motion to dismiss when such contentions were not raised in the trial court.

## III. Standard of Review

We review a trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.,* 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). "[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review questions of law *de novo*. *See Wells v. Tenn. Bd. of Regents,* 231 S.W.3d 912, 916 (Tenn.

2007). "We defer to the trial court's determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." *Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

We review a trial court's ruling concerning a motion to dismiss *de novo* with no presumption of correctness. *See Woodruff by & through Cockrell v. Walker,* 542 S.W.3d 486, 494 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Oct. 6, 2017). Concerning motions for recusal made pursuant to Tennessee Supreme Court Rule 10B, we likewise review the denial of such a motion *de novo* with no presumption of correctness. *See Elseroad v. Cook,* 553 S.W.3d 460, 462-63 (Tenn. Ct. App. 2018).

IV. Denial of Motion to Dismiss

Ms. Soucie contends that the trial court erred by denying her motion to dismiss filed pursuant to Tennessee Rule of Civil Procedure 12.02(6). In the motion, Ms. Soucie specifically alleged that because she was not the record owner of the real property "that is the subject of the plaintiffs' suit against her," Plaintiffs could not receive the relief they sought in the complaint. She therefore argued that Plaintiffs had failed to state a claim upon which relief could be granted. The trial court disagreed, finding in its resultant order denying Ms. Soucie's motion to dismiss that Plaintiffs had adequately stated claims of nuisance and interference with business relationships in their complaint. The court pointed out that neither claim required Plaintiffs to allege or demonstrate that Ms. Soucie owned the real property in question. We agree.

Tennessee Rule of Civil Procedure 8.01 sets forth two requirements for stating claims for relief: (1) "a short and plain statement of the claim showing that the pleader is entitled to relief" and (2) "a demand for judgment for the relief the pleader seeks." Tennessee Rule of Civil Procedure 12.02(6) provides adverse parties the opportunity to move for dismissal of deficient claims.

When faced with a motion pursuant to Tennessee Rule of Civil Procedure 12.02(6), the trial court's review is limited to "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *See Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn. 2011). When a trial court's ruling on a Rule 12.02(6) motion is appealed, "the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *See Trau-Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696 (Tenn. 2002). This Court has explained that a trial court "should grant the motion to dismiss only if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief." *Woodruff*, 542 S.W.3d at 494 (citing *Doe v. Sundquist,* 2 S.W.3d. 919, 922 (Tenn. 1999)).

Through her motion to dismiss, Ms. Soucie argued that Plaintiffs' complaint was insufficient under Tennessee Rule of Civil Procedure 8.01 because it failed to allege facts demonstrating that a party to this action held a property interest in the State's right of way. This assertion is predicated on Ms. Soucie's assumption that claims of nuisance and intentional interference with business relationships require a factual showing that a defendant's actions not only caused a disturbance to a plaintiff's use of property but that such actions occurred on real property in which one of the parties maintains an interest. We determine, however, that Ms. Soucie's postulate in this regard is erroneous.

This Court has defined a nuisance as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Caldwell v. Knox Concrete Prods., Inc.,* 391 S.W.2d 5, 9 (Tenn. Ct. App. 1964). "[A] nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Id.*

As our Supreme Court has explained:

Depending on the surroundings, activities that constitute a nuisance in one context may not constitute a nuisance in another. Whether a particular activity or use of property amounts to an unreasonable invasion of another's legally protectable interests depends on the circumstances of each case, such as the character of the surroundings, the nature, utility, and social value of the use, and the nature and extent of the harm involved.

* * *

Nuisance law has since developed over the centuries to the point where a nuisance may now consist of a physical condition on the land itself (i.e., vibrations, pollution, or flooding), cause discomfort or inconvenience to the occupants of the property (i.e., odors, dust, smoke, noise), or consist of a condition on adjoining property which impairs the occupier's tranquility (i.e., conducting an unlawful business or keeping diseased animals). W. Page Keeton, *Prosser and Keeton on the Law of Torts* 619-20 (5th ed. 1984). So "long as the interference is substantial and unreasonable, such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance." *Id.* at 620.

*Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364-365 (Tenn. 2002) (other internal citations omitted).

The wide scope of activities reached by the law of nuisance has not been limited to only those tortious activities occurring on a named party's real property. For example, our Supreme Court has held that a defendant, who acted exclusively on a public roadway, created a nuisance when the defendant's actions interfered both with public travel on the roadway and with the plaintiff's enjoyment of his real property. *See Richi v. Chattanooga Brewing Co.,* 58 S.W. 646, 646 (Tenn. 1900). In *Richi,* the conduct of an unauthorized private railroad, operating on public property, was determined to constitute a nuisance, *inter alia*, because the railroad obstructed ingress to and egress from the plaintiff's lot. *See id.*

Similarly, in the more recent case of *Anthony v. Constr. Prod., Inc.*, 677 S.W.2d 4, 10 (Tenn. Ct. App. 1984), this Court determined that a contractor hired by the State to perform road work was properly held liable for creating a nuisance along the roadway that interfered with the plaintiff landowners' use of their commercial property. In *Anthony*, the plaintiff landowners sued the private contractor, alleging that the contractor's act of digging a trench in front of the plaintiffs' business, which prevented proper ingress and egress to the business, and allowing said condition to remain for more than a year, constituted a nuisance. *See id*. Following a jury trial, the trial court entered judgment on the jury's verdict in favor of the plaintiffs. *See id*. This Court affirmed the trial court's finding of liability, rejecting the contractor's argument that summary judgment should have been granted in its favor. *See id*. ("The factual disputes are clear on the issues of [the defendant's] negligence, and the creation of a nuisance that affected the [plaintiffs'] property."). As demonstrated by both of these cases, the actor's liability was not predicated on its ownership of or interest in the land whereupon the act causing the nuisance occurred.

To properly review the issues presented on appeal, we have also considered relevant provisions of the Restatement (Second) of Torts. *See, e.g., Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997) (considering provisions of a Restatement in analysis); *Rose v. Third Nat. Bank*, 183 S.W.2d 1, 9 (Tenn. Ct. App. 1944) (considering provisions of a Restatement in analysis). As the Restatement (Second) of Torts § 821D (1979) explains, a private nuisance is a "nontrespassory invasion of another's interest in the private use and enjoyment of land." Comment b of Section 821D further elucidates:

> The phrase "interest in the use and enjoyment of land" is used in this Restatement in a broad sense. It comprehends not only the interests that a person may have in the actual present use of land for residential,

agricultural, commercial, industrial and other purposes, but also his interests in having the present use value of the land unimpaired by changes in its physical condition.

*Id*. As further explained in Section 821E:

The liability for private nuisance exists only for the protection of persons having "property rights and privileges," that is, legally protected interests, in respect to the particular use or enjoyment that has been affected. . . . It denotes rights and privileges in respect to land effective against persons in general—sometimes termed "rights in rem." One having "property rights and privileges" in land can maintain an action under the rule here stated, only if the conduct of the actor interferes with the exercise of the particular rights and privileges that he owns.

Restatement (Second) of Torts § 821E, comment a.

The instant analysis necessarily invokes the separate and differing attributes of trespass and nuisance. In contrast, a trespass is "an invasion of the interest in the exclusive possession of land, as by entry upon it," whereas a nuisance is "an interference with the interest in the private use and enjoyment of the land, and does not require interference with the possession." Restatement (Second) of Torts § 821D, comment d. Although there may exist some degree of overlap respecting these distinguishable causes of action, by way of example, the comments to § 821D of the Restatement explain:

[T]he flooding of the plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration; and when the defendant's dog howls under the plaintiff's window night after night and deprives him of sleep, there is a nuisance whether the dog is outside the plaintiff's land or has entered upon it . . . .

Restatement (Second) of Torts § 821D, comment e.

Based upon the above-referenced authority, we conclude that a claim of nuisance does not require demonstration that a party maintains an ownership interest in the real property upon which the act of nuisance occurs. Rather, a nuisance claim requires a showing that the defendant has unreasonably interfered with the plaintiff's use and enjoyment of the plaintiff's property, wherever the nuisance act occurs. *See Lane*, 92 S.W.3d at 365; *Caldwell*, 391 S.W.2d at 9. In the case at bar, Plaintiffs alleged that Ms. Soucie's conduct interfered with Plaintiffs' use and enjoyment of their commercial property, which was the real property upon which the business operated. We find it

inconsequential that the conduct establishing the nuisance occurred on real property belonging to the State.

Concerning Plaintiffs' claim of intentional interference with business relationships, our Supreme Court has explained that such a claim requires the following elements to be shown:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med,* 71 S.W.3d at 701 (internal citation and footnotes omitted).  Similarly, this claim sets forth no requirements concerning ownership of real property; rather, this basis for relief focuses on the conduct and knowledge of the defendant.

Without weighing the strength of the factual allegations contained in the complaint, we note that Plaintiffs alleged that Ms. Soucie took several actions which restricted Plaintiffs' use of their commercial property.  In the complaint, Plaintiffs alleged that Ms. Soucie planted trees and placed a trailer in the gravel road providing access to Plaintiffs' property from Parker Lane, thereby impeding or preventing the enjoyment and use of their real property.  Plaintiffs further claimed that Ms. Soucie's conduct had substantially interfered with and harmed Mr. Ryan's business.  Construing the complaint liberally, as we must, we recognize that sufficient factual allegations in support of Plaintiffs' claims were included in the complaint.  *See Trau-Med,* 71 S.W.3d at 696.  We therefore affirm the trial court's denial of the motion to dismiss on that basis.

We note that Plaintiffs have asserted that Ms. Soucie, in support of reversal of the trial court's denial of her motion to dismiss, improperly included additional factual or legal contentions within her appellate brief that were not included in the motion to dismiss initially, such as whether the State was an indispensable party.  As our Supreme Court has explained, "the resolution of the motion is determined by an examination of the pleadings alone."  *Highwoods Props., Inc. v City of Memphis,* 297 S.W.3d 695, 700 (Tenn. 2009).  Therefore, we will not consider any additional factual or legal contentions that were not contained in the original pleadings.  Having determined that based on the language contained in the complaint, Plaintiffs complied with Tennessee's liberal standard for pleadings, no further consideration of the motion to dismiss or additional issues related thereto is necessary.

V. Nuisance Claim

Ms. Soucie has appealed the trial court's determination that she was liable to Plaintiffs based on their claim of nuisance and the court's award to Plaintiffs of injunctive relief and monetary damages. Ms. Soucie again contends that Plaintiffs failed to establish evidence of any party's property interest in the State right of way. Ms. Soucie posits that because her actions and the resulting harm occurred on real property not belonging to a party to this action, a determination of nuisance would be improper. Having previously determined that a claim of nuisance does not require that a party maintain an ownership interest in the property where the act of nuisance occurs, we determine Ms. Soucie's argument to be unavailing.

Similar to the conduct of the railroad in *Richi* and the contractor in *Anthony*, Ms. Soucie's actions in the present case prevented Plaintiffs from enjoying the unhindered use of their commercial property because Ms. Soucie impeded ingress and egress across the right of way. Normal business activities on Plaintiffs' property, including retrieval of trash by a waste disposal company and receipt of deliveries from a supplier, ceased due to Ms. Soucie's obstruction of Plaintiffs' street access via the State right of way. The expense burden resulting from the inability of Plaintiffs' trash service to reach Plaintiffs' property and remove waste produced by Plaintiffs' business was shown to total $14,850. These substantial economic costs, as proven at trial, clearly amount to a sufficient inconvenience to disturb the normal person. *See Lane*, 92 S.W.3d at 365.

Ms. Soucie also contends that the record preponderates against the trial court's finding that Plaintiffs possessed a grant of permission from the State to use the right of way. Ms. Soucie suggests that because Plaintiffs used the right of way absent permission from the State, she cannot be held liable for restricting Plaintiffs' use thereof. Insofar as our Supreme Court has emphasized the circumstantial nature of nuisance, *see Lane*, 92 S.W.3d at 365, we have undertaken a review of Ms. Soucie's postulate. Based upon our thorough review of the evidence, we affirm the trial court's finding that Plaintiffs possessed a grant of permission for the reasons stated below.

In reaching its determination that Plaintiffs had permission from the State to use the right of way, the trial court reviewed testimony from three lay witnesses: Christopher Smith, a current State employee; Joe Graham, a friend of Plaintiffs who assisted in the request that Plaintiffs' property be rezoned as commercial; and Perry Mayo, a former Building Codes Coordinator for the City of Chattanooga. When the Cranes sought to have their real property rezoned from residential to commercial, the City required a separate street access point from the Cranes' adjoining residential property in order to obtain City planning approval. During trial, each witness discussed the Cranes' requested

grant of permission to traverse the State right of way for access to Plaintiffs' property for commercial use.

Mr. Mayo testified that he participated in the rezoning of Plaintiffs' property in 1995. He related that to obtain rezoning approval, Plaintiffs' property would have needed a street access point. According to Mr. Mayo, the City's traffic engineering official always required that a parcel have street access before it could receive rezoning approval from traffic engineering. Mr. Mayo further noted that the Cranes' real property was not approved for rezoning on an initial request because the property lacked street access separate from the adjacent residential parcel. He further explained that because the Cranes' property was successfully rezoned at a later date, the Cranes must have received State authorization to use the right of way between Parker Lane and the commercial property. Although Mr. Mayo did not speak to the legal nature of the grant of permission from the State, he maintained that the approval from the City traffic-engineering official indicated that the State provided the Cranes with street access to their property via the right of way. He observed that in his experience, the State had issued verbal, but not written, authorizations granting use of State property for access to properties like the parcel belonging to Plaintiffs.

Mr. Graham testified that he likewise participated in the rezoning of the Cranes' property in 1995. Mr. Graham agreed to assist Mr. Crane with the rezoning application and a related building permit application. Following a pre-planning meeting with City officials regarding the rezoning of the property, Mr. Graham recalled having been informed by City officials that the real property would need a separate street access point before it could be rezoned as commercial. The property previously shared street access with an adjacent residential parcel also owned by Plaintiffs. According to Mr. Graham, municipal zoning regulations required a separate street access for the commercial property. Mr. Graham stated that after learning of the need for separate access, he communicated with the State on several occasions regarding approval of the right of way for use as street access to the Cranes' property. Although Mr. Graham conceded his lack of knowledge of any easement recorded for such purposes, he added that the State did ultimately issue a letter approving use of the right of way as a street access point for the Cranes' commercial property.

Mr. Smith, a licensed engineer employed by the Tennessee Department of Transportation ("TDOT"), testified that he opened a file pertaining to the section of the State right of way at issue after being contacted by both Ms. Crane and Ms. Soucie. According to Mr. Smith, he found no document permitting use of the State right of way as an access to Plaintiffs' property. Mr. Smith admitted, however, that he had only begun working for TDOT in 2006 and was therefore unfamiliar with the 1995 rezoning of the property.

The trial court considered each witness's knowledge of the 1995 rezoning process before making its finding that Plaintiffs had permission from the State to use the right of way. In determining that such grant of permission existed, the trial court primarily relied on the respective testimonies of Mr. Graham and Mr. Mayo because both witnesses were involved in the City's rezoning and building permit process for Plaintiffs' property when the State's grant of permission was provided in 1995. The trial court contrasted those witnesses' knowledge of the 1995 rezoning process with Mr. Smith's acknowledged lack of such knowledge. Regarding the matter, the court noted that Mr. Smith admitted his lack of knowledge and participation in the 1995 rezoning process because his employment with the State did not begin until 2006.

Ms. Soucie asserts that the trial court erred in crediting the testimony of Mr. Graham and Mr. Mayo. In support, she points to the inconsistency exhibited by their respective testimonies, primarily regarding whether the State's grant of permission was provided in writing. Mr. Mayo relied on the traffic engineering official's approval of the Cranes' application for rezoning of their property as evidence of the State's grant of permission, whereas Mr. Graham testified that he had seen a letter from the State that established the grant of permission. The court nonetheless resolved the difference by concluding that although the witnesses disagreed on the nature of the grant of permission, both Mr. Graham and Mr. Mayo agreed that the State had provided permission for use of the right of way for ingress to and egress from the Cranes' commercial property.

The trial court ultimately determined that Plaintiffs possessed a grant of permission for ingress to and egress from their property via the right of way, reaching such finding after weighing the relative knowledge of each witness regarding the grant of permission acquired from the State in 1995. Persuaded by the testimony of Mr. Graham and Mr. Mayo, the trial court noted that both witnesses explained that street access to the Cranes' property was a prerequisite to the 1995 rezoning approval. Concerning these findings of fact, "[w]e defer to the trial court's determinations of witness credibility." *Coleman*, 551 S.W.3d at 694.

Despite Ms. Soucie's contention to the contrary, the weight of the evidence does not preponderate against the trial court's findings of fact. Mr. Smith's testimony denying his knowledge of a State grant of permission for Plaintiffs' use of the right of way is not conclusive on this issue. As the trial court found, Mr. Smith lacked personal knowledge regarding the 1995 grant of permission preceding the rezoning action. For those reasons, we conclude that the evidence preponderates in favor of the trial court's determination that a grant of permission for use of the right of way was provided by the State to the Plaintiffs for ingress to and egress from their commercial property. Having determined

-12-

that Ms. Soucie's actions interfered with Plaintiffs' use and enjoyment of their real property, we affirm the trial court's award predicated upon nuisance.

## VI. Intentional Interference with Business Relationships

Ms. Soucie also argues that the trial court erred by concluding that she interfered with Plaintiffs' business relationships by preventing their use of the right of way as a driveway to the business operation. Having carefully reviewed the elements of this claim and the proof presented, we disagree.

As previously explained, our Supreme Court has elucidated that a claim of intentional interference with business relationships requires that the following elements be shown:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means*;* and finally, (5) damages resulting from the tortious interference.

*Trau-Med,* 71 S.W.3d at 701 (internal citation and footnotes omitted). In *Trau-Med*, the High Court expressly adopted comment c of the Restatement (Second) of Torts § 766B, which states in pertinent part:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations . . . if the potential contract would be of pecuniary value to the plaintiff. . . . Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.

*Trau-Med,* 71 S.W.3d at 701 n.4.

Concerning particularly the requirement that the defendant has been shown to have acted with improper motive or by improper means, our Supreme Court has instructed:

> It is clear that a determination of whether a defendant acted "improperly" or possessed an "improper" motive is dependent on the particular facts and circumstances of a given case, and as a result, a precise, all-encompassing

-13-

definition of the term "improper" is neither possible nor helpful. However, with regard to improper motive, we require that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff.

*Id.* at 701 n.5.

In the instant action, the trial court found in relevant part as follows concerning Plaintiffs' claim of intentional interference with business relationships:

The Court determines that [Ms. Soucie] moved to the end of a dead end street mistakenly thinking she owned all the vacant property surrounding her and that the nearby properties were all residential. When [Ms. Soucie] discovered that Mr. Ryan was going to operate his business on property that she thought was residential, she told Ryan he was operating an illegal business. When the Ryans told her they were going to access the business via the Driveway, she took matters into her own hands to stop Plaintiff[s] from using the Driveway. Although Plaintiff[s] told [Ms. Soucie] that [Plaintiffs' supplier] and [Plaintiffs' waste disposal service] would only use the Driveway during the daytime and infrequently, [Ms. Soucie] planted trees on the Driveway and also parked her truck and trailer on the Driveway to block access to the site.

The Court concludes that [Ms. Soucie] knew that Plaintiff was starting his heat and air business and that [Ms. Soucie] planted her trees and placed her truck and trailer on the Driveway to prevent the Plaintiff[s'] support services from using the Driveway. As such the Court concludes the Plaintiffs have established by a preponderance of the evidence that [Ms. Soucie] intentionally interfered with Plaintiff[s'] business relationships.

Our thorough review of the record supports a determination that the evidence preponderates in favor of the trial court's factual findings concerning this claim. Mr. Ryan testified that Plaintiffs held specific business contracts with third parties, a supplier and a waste disposal company. Mr. Ryan related that he informed Ms. Soucie "in early 2017" of Plaintiffs' ongoing business relationship with York, a supplier, and also notified Ms. Soucie that deliveries would be made by York via the right of way. Similarly, Mr. Ryan informed Ms. Soucie of Plaintiffs' contract with a waste disposal service, which would arrive once per week to haul away trash via the right of way. Although Ms. Soucie denied having knowledge of Plaintiffs' business relationships with identified third parties, the trial court credited Mr. Ryan's testimony concerning his conversation with Ms. Soucie. Ms. Soucie did admit, however, that the Ryans had notified her in January 2017 of their intention to use the right of way as access to their property. Clearly, these

business relationships provided a pecuniary value to Plaintiffs, as demonstrated by Plaintiffs' proof concerning the damages caused when the waste disposal service was unable to traverse the State right of way to collect Plaintiffs' business refuse.

Despite knowledge of Plaintiffs' intent to utilize the driveway access for deliveries and waste disposal services, Ms. Soucie proceeded to obstruct passage by planting trees and placing other objects so as to impede usage. The evidence preponderates in favor of the trial court's determination that Ms. Soucie "planted her trees and placed her truck and trailer on the Driveway to prevent the Plaintiff[s'] support services from using the Driveway." Ms. Soucie intended to terminate Plaintiffs' use of the road for suppliers and other business uses by purposefully obstructing property owned by the State that Plaintiffs had used for business purposes for a number of years. As found by the trial court, Ms. Soucie acted with an improper motive, and her actions caused Plaintiffs to incur damages. By reason of her objection to Plaintiffs' use of the right of way for business purposes, she obstructed the right of way by improper means. The trial court properly concluded that Ms. Soucie intentionally interfered with Plaintiff's business relationships.

## VII. Motion to Recuse the Trial Court Chancellor

Ms. Soucie contends on appeal that the trial court erred in denying her motion to recuse. Ms. Soucie argues that the chancellor's impartiality could reasonably be questioned because the chancellor allegedly "concealed" her prior partnership with Plaintiffs' counsel. Following our thorough review, we conclude that the trial court properly denied Ms. Soucie's recusal motion.

Tennessee courts employ an objective test for measuring whether recusal is proper to protect against actual bias or the appearance of bias. *See State v. Cannon,* 254 S.W.3d 287, 307 (Tenn. 2008). As our Supreme Court has explained:

> Canon 2 of the Code of Judicial Conduct provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Tenn. Sup. Ct. R. 10, Canon 2(A). Likewise, Canon 3 requires: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ." Tenn. Sup. Ct. R. 10, Canon 3(E)(1).

-15-

*Id.* at 308. In *Cannon,* our Supreme Court determined that the mere existence of a friendship between a trial court judge and an assistant district attorney, without further evidence, was insufficient to mandate recusal. *Id.*

Moreover, this Court has previously determined that mandatory recusal was unnecessary, absent some other showing of bias, in a case where a trial court judge had shared office space with a party's attorney eight years prior to the filing of the parties' divorce action wherein that judge presided. *See Kinard v. Kinard,* 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). *But see Bean v. Bailey*, 280 S.W.3d 798, 805-06 (Tenn. 2009) (determining that recusal was appropriate when the judge and counsel had filed misconduct claims against one another and been involved in numerous hostile meetings, because judicial impartiality was in doubt).

Here, Ms. Soucie alleges that the chancellor and Plaintiffs' counsel were in partnership together twenty-three years prior to this action's filing. The evidence proffered in support of Ms. Soucie's motion to recuse resembles the circumstances presented in *Kinard.* In both instances, a party's attorney had engaged in a former business relationship with the trial court judge. *See Kinard,* 986 S.W.2d at 228. Tennessee case law provides, however, that a party moving for recusal must be prepared to provide specific evidence of extrajudicial bias or prejudice toward a party or party's attorney. As this Court has elucidated regarding bias and/or prejudice:

> [A]lthough "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party[,] . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State,* 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 697 (Mo. App. 1990)). "Personal bias involves an antagonism toward the moving party, but does not refer to any views that a judge may have regarding the subject matter at issue." *Id.* (citing *United States v. Baker,* 441 F. Supp. 612, 616 (M. D. Tenn. 1977); 46 Am. Jur. 2d "Judges" § 167 (1969)). Moreover, "[i]mpersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id.* (citation omitted). Where "the bias is based upon [the judge's] actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.*

-16-

*Durham v. Tenn. Dep't of Labor & Workforce Dev.*, No. M2014-00428-COA-R3-CV, 2015 WL 899024, at *10 (Tenn. Ct. App. Feb. 27, 2015).

In the case at bar, Ms. Soucie presented no evidence of personal bias or prejudice on the part of the chancellor. Applicable law does not mandate a judge's recusal from a case simply because that judge is acquainted with or was once professionally associated with a party's counsel. Ergo, we affirm the trial court's denial of Ms. Soucie's motion to recuse.

## VIII. Directed Verdict

Finally, Ms. Soucie argues that the trial court erred by denying her motion for a directed verdict.[2] Notably, however, Ms. Soucie's brief completely fails to comply with the requirements concerning a proper written argument in regard to this issue. Tennessee Rule of Appellate Procedure 27(a)(7) provides that an appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." As our Supreme Court has explained, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). This Court has likewise elucidated that an issue may be considered waived when a party has failed to "cite authority for its arguments or to argue the issues in the body of its brief." *See Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011). We therefore conclude that Ms. Soucie's issue concerning whether trial court erred in its failure to grant her motion for a directed verdict has been waived.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. Costs on appeal are taxed to the appellant, Laverna Soucie. This case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] We note that the trial court properly treated this motion as one for involuntary dismissal under Tennessee Rule of Civil Procedure 41.02, which governs such motions in bench trials, as opposed to Tennessee Rule of Civil Procedure 50, which governs motions for directed verdict in jury trials.